UNITED STATES of America, Appellee,

v.

John T. BROWN, Defendant-Appellant.

No. 79–1046.

United States Court of Appeals,
First Circuit.

Argued June 6, 1979.

Decided Aug. 8, 1979.

James B. Krasnoo, Boston, Mass., by appointment of the Court, with whom Norris, Kozoday & Krasnoo, Boston, Mass., was on brief, for defendant-appellant.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant, John T. Brown, appeals from a jury conviction of stealing sixteen birds in violation of 18 U.S.C. § 659 [1] and 18 U.S.C. § 2.[2] Appellant assigns six errors to the district court which we treat seriatim.

1. *Whether Appellant's Motion for Judgment of Acquittal Should Have Been Granted.*

■ In assessing a motion for judgment of acquittal, we must examine the evidence as a whole and all legitimate inferences to be reasonably drawn therefrom in the light most favorable to the government. *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978); *United States v. Scibelli*, 549 F.2d 222, 229 (1st Cir.), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); *United States v. Canessa*, 534 F.2d 402 (1st Cir. 1976); *United States v. Doran*, 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974). The government here had to prove beyond a reasonable doubt that on or about April 27, 1977, the defendant stole sixteen birds worth more than $100 from the Delta Airlines air freight terminal at Logan Airport which had been shipped from Virginia to Massachusetts. The evidence, which has a Damon Runyon flavor, viewed from the government's vantage, was as follows. Nancy Pancoast who, along with her husband, operates Blue Ridge Aviaries in Lowesville, Virginia, received an order from a pet store in Somerville, Massachusetts, called Big Fish Little Fish for eight male and four female cockatiels and one yellow

---

1. The birds had been shipped in interstate commerce from Virginia to Massachusetts via Delta Airlines.

2. 18 U.S.C. § 2 provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

headed Amazon parrot. A cockatiel is a small Australian parrot. The value of the birds was in excess of $100.

Appellant and two friends, Roland Coyne and Jerome Proulx, went to Big Fish Little Fish sometime during the evening of April 27, 1977. Proulx was a frequent visitor to the store and was called Gerry the Canary. While at the store, appellant was in a position to hear a clerk, Lester Thomson, acknowledge a telephone message from Delta Airlines that a shipment of birds addressed to the store had arrived at the airport. The clerk put the information down on paper and then called the owner of the store and repeated the message. Appellant was also in a position to hear this. The message could be understood to state that the birds were cockatoos, a variety of parrot, described accurately, if not scientifically, at the trial as the kind that sits on Baretta's shoulder in the TV show of the same name. A cockatoo is much larger and more expensive than a cockatiel. Appellant sometime later asked Proulx if he would be interested in some cockatoos and said that he would have no trouble picking them up.

After leaving the store, the three men, accompanied by Proulx's wife, went to appellant's home from where he made a phone call. Appellant then suggested to Proulx and his wife that they take a ride with him and his wife to the airport. On the way, appellant borrowed $20 from Proulx. Coyne did not go to the airport. At the airport, appellant, his wife, and Proulx's wife got out of the station wagon and went into one of the buildings. When they returned, appellant had a box with him that he put in the back of the station wagon. Appellant laughed all the way home. Proulx testified that he did not see what was in the box or hear any chirping.

Appellant later gave Proulx three albino cockatiels to care for, which appellant subsequently took back. The shipment from Blue Ridge contained three albino cockatiels. Appellant also gave Proulx outright an Amazon parrot which he turned over to the F.B.I. agents when they interviewed him during their investigation of the theft.

When appellant was told by Proulx that he had given the parrot to the F.B.I., appellant told Proulx that he was stupid, or words to that effect. A caged Amazon parrot was brought to the trial, but no one was able to identify it as either being the one shipped by Blue Ridge Aviaries or the one Proulx gave to the F.B.I. The parrot did not talk, at least at the trial. After appellant was indicted, he told the F.B.I. that Coyne had taken the birds.

Three Delta employees testified that a man, accompanied by two women, came to the air freight terminal, stated that he was from Big Fish Little Fish and had come for the birds, paid the shipping charges of $14.90, signed the air receipt bill as James Larson, and took the birds shipped by Blue Ridge and consigned to Big Fish Little Fish. None of the employees could identify appellant as the man who took the birds. One said that the man limped. Appellant knew at the time he went to the airport that Coyne had been in a rather serious automobile accident. One of Delta's employees, George Morris, received a telephone call from an unidentified male sometime prior to the time the birds were picked up asking if there was a shipment in for Big Fish Little Fish. Morris responded to the call by giving the air freight charges and also told the caller that Delta had notified Big Fish Little Fish earlier that the birds had arrived. The caller stated, in effect, that that was fine and the shipment would be picked up shortly.

The fact that appellant was not identified by any of the Delta employees as the one who picked up the birds is not fatal to the government's case.

The prosecution may prove its case by circumstantial evidence, and it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt. *United States v. Concepcion Cueto,* 515 F.2d 160, 162 (1st Cir. 1975); *United States v. Currier,* 454 F.2d 835, 838 (1st Cir. 1972); *Dirring v. United States,* 328 F.2d 512, 515 (1st Cir. 1964). *See also Parker v. United States,* 378 F.2d 641, 644-45 (1st Cir. 1967). The trier of fact is free to choose among various rea-

sonable constructions of the evidence. *United States v. Klein*, 522 F.2d 296, 302 (1st Cir. 1975).

*United States v. Gabriner, supra*, 571 F.2d at 50.

Based on the evidence, the jury could find beyond a reasonable doubt that appellant overheard at least one of the telephone conversations relative to the arrival of the birds at Delta's air freight terminal. There was evidence from which it could find that appellant decided to steal the birds and that he called Delta to confirm the shipment and ascertain the shipping charges. There is little question that appellant went to the airport and picked up a box there. The jury was not bound to believe Proulx's testimony that he did not see what was in the box or hear any chirping; it could have found that he was given three albino cockatiels and a parrot from the shipment. Coyne testified consistently on both direct and cross-examination that he did not go to the airport at any time and knew nothing about the birds. Although Coyne was an unsavory character with a criminal record and was, in fact, under prison sentence at the time he testified, his credibility was for the jury to determine. Proulx, the chief witness for the government, was a hesitant, confused and very reluctant witness, but the jury had the right to pick and choose from what he said, and he said enough to make the picking and choosing easy. The government forged a chain of circumstantial evidence strong enough for the jury to find appellant guilty beyond a reasonable doubt.

2. *Whether It Was Error to Admit in Evidence Testimony of a Phone Call by an Unidentified Male to the Delta Air Freight Terminal.*

 Appellant misunderstands the reason for the admission of the phone call.

The question of voice identification was not in issue.[3] There was testimony by Proulx that appellant made a phone call prior to the trip to the airport. Witness Morris was properly allowed to testify that, prior to the time the birds were picked up, he received a phone call from an unidentified male inquiring about the shipment and that he responded by giving the shipping charges. On the way to the airport, appellant borrowed $20 from Proulx. The jury could find, without any identification as to the voice, that appellant called Delta to check the information he had overheard at the pet store and to obtain the shipping charges. The phone call, although not critical by itself, was another link in the chain of circumstantial evidence tending to prove that appellant stole the birds. The identity of a person making a phone call can be proven by circumstantial evidence. *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972); *Grogan v. United States*, 394 F.2d 287 (5th Cir. 1967), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968); *United States v. Stein*, 327 F.2d 657, 658 (2d Cir. 1964). It was not error to admit the testimony as to the phone call received at the Delta air freight terminal inquiring about the shipment of birds for Big Fish Little Fish.

3. *Whether the District Court Abused Its Discretion in Ruling That Jerome Proulx Should Be Treated As Hostile Pursuant to Federal Rule of Evidence 611(c).*[4]

It has long been established that in the use of leading questions "much must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and jus-

---

**3.** The appellant cites to cases in which the question was whether evidence that the voice was that of the accused should have been admitted.

**4.** Fed.R.Evid. 611(c) provides:
(c) *Leading questions.* Leading questions should not be used on the direct examination

of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

tice whether the circumstances justify leading questions to be propounded to a witness by the party producing him." *St. Clair v. United States*, 154 U.S. 134, 150, 14 S.Ct. 1002, 1008, 38 L.Ed. 936 (1894). *See Nutter v. United States*, 412 F.2d 178, 183 (9th Cir. 1969), *cert. denied*, 397 U.S. 927, 90 S.Ct. 935, 25 L.Ed.2d 107 (1970); *Lerma v. United States*, 387 F.2d 187, 190 (8th Cir.), *cert. denied*, 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1968).

> Rule 611(c) codified the traditional mode of dealing with leading questions. It acknowledges that they are generally undesirable on direct-examination, that they are usually permissible on cross-examination, and that there are exceptions to both these statements. Although not explicitly stated, the rule implies what has in fact long been the case—that the matter falls within the area of trial court discretion, and that reversals on the basis of non-compliance with Rule 611(c) will be exceedingly rare.

3 Weinstein's Evidence ¶ 611[05] at 611–54 (1978).

██ The record does not bear out appellant's contention that witness Proulx was not adverse, evasive or hostile. Proulx and appellant were close friends. The evidence strongly suggests that Proulx was a participant in the crime. His testimony is replete with lapses of memory attributed to alcohol and drugs. He stressed several times his susceptibility to suggestion by the last person who talks to him. Appellant talked to Proulx at length about the case right up to the trial. While Proulx was not hostile in the sense of being contemptuous or surly, he was both evasive and adverse to the government.

It is true that the prosecutor did not move to have Proulx declared a hostile witness. This was a decision made by the court on its own initiative, but only after a lengthy direct examination (twenty-five transcript pages) during which all leading questions were excluded. It had become painfully clear that the district court was faced with a witness whose apparent lapses of memory, failure to understand what he had said or written on prior occasions, as well as the questions asked and his general air of confusion, made his testimony prolix and difficult to comprehend. The trial judge had a duty to see to it that the case be tried with reasonable dispatch and that the testimony of Proulx be presented as coherently as possible.[5] We find no abuse of discretion in the ruling by the district judge that the prosecutor be allowed to use leading questions in his remaining direct examination of Proulx.

### 4. Whether the District Court Abused Its Discretion in Excluding Certain Cross-Examination As Not Relevant.

The extent to which cross examination shall be allowed rests within the sound discretion of the trial court. In order to establish an abuse of discretion in this case, the defendant must show that the restrictions imposed upon his cross examination were clearly prejudicial.

*United States v. Harris*, 367 F.2d 633, 636 (1st Cir. 1966), *cert. denied*, 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787 (1967). Our statement in *United States v. Honneus*, 508 F.2d 566, 572 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975), that "[t]he denial of cross-examination upon a proper subject for cross-examination is a ground for reversal 'if the denial appears to have been harmful.' *Wheeler v. United States*, 351 F.2d 946, 947 (1st Cir. 1965)," does not change the basic rule.

██ There was no prejudice or harm to appellant here. For reasons not entirely clear, the government brought to the courtroom a caged Amazon parrot. Presumably, the government intended to prove that the parrot was the one Proulx testified he gave to the F.B.I. No one identified the parrot as coming from the stolen shipment or as the one Proulx turned over to the F.B.I. The parrot was never offered or entered as

---

5. This was not the situation of *United States v. Karnes*, 531 F.2d 214, 217 (4th Cir. 1976), cited by appellant, where the court assumed the role of prosecutor and produced evidence essential to overcome the defendant's presumption of innocence.

an exhibit. Defense counsel asked Proulx a series of questions trying to establish that the parrot was not the one shipped by Blue Ridge. After it was clear that Proulx couldn't, or wouldn't, identify the bird as ever being his, the court halted the cross-examination and suggested that defense counsel move on to something relevant. The suggestion by appellant that this denied him "the right to inquire of the principal prosecution witness as to a matter that affected his credibility, exposed facts to falsehood [and] closed off avenues of an incourtroom examination"[6] goes beyond the limits of credible argument and enters the area of partisan exaggeration. This was only one facet of a lengthy and, at times, quite effective cross-examination. While the parrot may have been an amusing diversion for the jury, its role in the case was never established. The district court did not abuse its discretion in curtailing cross-examination as to the markings on the parrot's cere,[7] beak, and legs.

> 5. *Whether the District Court Abused its Discretion in Ruling That if Defendant Testified, Evidence of Convictions over Ten Years Old Could Be Introduced for Impeachment Purposes.*

Appellant had been convicted in the years 1960-1964 of burglary, third degree burglary (twice), second degree burglary and petty larceny. He had also been convicted in 1976 on a federal charge of a Felon Receiving Firearms for which he was on probation at the time of trial. Prior to trial, the government notified appellant in writing that if he testified, it would offer his criminal record for impeachment purposes. Fed. R.Evid. 609(b).[8] Appellant filed a motion *in limine* asking that the evidence be excluded. The district court reserved judgment until the trial.

■ Federal Rule of Evidence 609(b) specifies the standard against which the district court's ruling is to be measured. The court must determine "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." There is no doubt that the district judge here was fully aware of the rule. After he was informed at the close of the government's case that appellant would testify, the judge stated:

> All right. You are clear that the conviction in this court is going in in any event and I am beginning to think about letting the other ones in. I have been reading the annotation to the rule and a number of indications where convictions of burglary, since they go to honesty and honesty goes to credibility, are admissible and that is the way I am definitely leaning at the moment.

Just before the defense proceeded, the judge was told that appellant would not take the witness stand. He then said:

> Let's be clear. For one thing, I didn't make a formal ruling. Were I do so [*sic*], I would say the probative value exceeds the prejudicial value in the way the case has developed.

A short time before the end of all of the evidence, the prosecution stated:

> Your Honor, just in case this comes up down the road on the ten-year old convic-

---

6. Appellant's Brief at 36.

7. Cere—"a soft swollen ′mass through which the nostrils open at the base of the upper mandible and which occurs esp. in birds of prey and parrots and in the latter is often feathered." Webster's Third New International Dictionary (1971).

8. Fed.R.Evid. 609(b) provides:
 Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

tions, the Court has to make a finding that based upon, in the interests of justice, the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect and I would ask the Court about—

The court responded:

Well, I said that in view of the conflicting credibility issues that have been raised in this case, particularly by the 302 that was read to the jury which gave Mr. Brown's version without Mr. Brown taking the stand, that if Mr. Brown did take the stand, I find the probative value of convictions of burglary and receiving stolen property go to his honesty which is another aspect of truthfulness and that the prejudicial value does not exceed the probative value and I said it before the recess. I didn't mention the 302.

We think that the requirements of the rule were met, even though the specific facts and circumstances were not itemized for the record.

Since the court had the Rule before it when it made the determination that the prior criminal activity of the defendant was admissible, the finding of the district court can be interpreted as concluding that the usefulness of this past criminal conviction substantially outweighed the possible prejudice to defendant. That the court neither analyzed on the record the nature of possible prejudice to defendant nor used the explicit words of the Rule in terms of "substantially outweighing" is not crucial. Sufficient evidence in the record indicates that the trial judge made a thorough and thoughtful analysis of the issue and based his conclusion upon various factors which were then before him.

*United States v. Cohen,* 544 F.2d 781, 785 (5th Cir.), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977).[9]

▉▉▉ Appellant's statement to the F.B.I. accusing Coyne of the theft was read

to the jury (the 302). Proulx's testimony as to Coyne's involvement was ambiguous and certainly did not exculpate him. Appellant's sister-in-law testified that she saw a box of birds at Coyne's apartment which he told her had come from Delta Airlines. Coyne's credibility was, therefore, pitted against the credibility of appellant and Coyne's criminal record was in evidence. In this situation, the jury was entitled to know that appellant had been convicted four times for burglary and once for petit larceny. The reasoning of the court in *United States v. Ortiz,* 553 F.2d 782 (2d Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977), which involved the admissibility of a four year old narcotics conviction under Rule 609(a) is instructive. The government's only eye witness had an extensive criminal record which had been put in evidence and exploited on cross-examination. In sustaining the admission of the conviction, the court noted:

When a "case [would be] narrowed to the credibility of two persons—the accused and his accuser—. . . in those circumstances there [is] greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses [is] to be believed." *Gordon v. United States,* 127 U.S.App. D.C. 343, 383 F.2d 936, 941 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). *Cf. United States v. Jackson,* 405 F.Supp. 938, 942 (E.D.N.Y. 1975).

*Id.* at 785.

Of course, the mere fact that the defendant's credibility is in issue—a circumstance that occurs whenever the defendant takes the stand—cannot, by itself, justify admission of evidence of convictions over ten years old. Such a rule would make the ten year limit in Rule 609(b) meaningless. But when the defendant's alibi is that another culprit committed the crime and the alternative culprit's credibility is severely at-

---

9. This is not like the twenty-five year old sodomy conviction admitted by the district court in *United States v. Cavender,* 578 F.2d 528 (4th Cir. 1978). The Fourth Circuit reversed be-

cause there was no finding of specific facts and circumstances showing that the probative value of the conviction substantially outweighed its prejudice and effect.

tacked when he takes the stand and denies his involvement, the probative value (*i. e.,* the importance) of prior conviction evidence relating to the defendant necessarily increases. Here the admissibility of such highly important evidence was supported by a number of other factors.

In Rule 609(a) appeals we have found no abuse of discretion in the introduction for impeachment purposes of a manslaughter conviction, *United States v. Oakes,* 565 F.2d 170, 173 (1st Cir. 1977), and manslaughter and arson convictions, *United States v. Russo,* 540 F.2d 1152, 1156 (1st Cir.) *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976). Burglary and petit larceny have a definite bearing on honesty which is directly related to credibility. "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity." *Gordon v. United States,* 127 U.S.App. D.C. 343, 347, 383 F.2d 936, 940 (1967) (Burger, J.). Moreover, the probability that appellant's character for veracity had improved since the time of the burglary convictions (an assumption that underlies the ten year limit) was negated by his more recent criminal activity. *See* 3 Weinstein's Evidence ¶ 609[03](2). The district court did not abuse its discretion in informing appellant that if he testified, evidence of the convictions over ten years old would be allowed for impeachment purposes.

### 6. *The Charge*

 Appellant claims that the court committed reversible error because, as part of the charge, it stated "what a person does is frequently more indicative of the person's true state of mind than what he says."

In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

We have read the charge in its entirety and it is a model of clarity of language that expresses accurately the applicable law. In our opinion, the sentence was not an incorrect statement of law, not misleading, and not inapplicable.

*Affirmed.*