**UNITED STATES of America,**

v.

**Michael A. MAHONE, Defendant.**

**No. CR–03–93–B–W.**

United States District Court, D. Maine.

Aug. 6, 2004.

Richard L. Hartley, Billings & Silverstein, Bangor, ME, for Michael Anthony Mahone, Defendant.

James L. McCarthy, Office of the U.S. Attorney, District of Maine, Bangor, ME, for U.S., Plaintiff.

## ORDER REGARDING MOTIONS IN LIMINE

WOODCOCK, District Judge.

### I. Introduction

Charged with attempted bank robbery and interstate transport of a stolen vehicle,

the Defendant filed three motions *in limine* before the Court to test the admissibility of the following evidentiary matters: (1) his prior convictions under Federal Rule of Evidence 609 (Docket # 50); (2) certain incidents prior to his arrest on the instant charge (Docket # 51); and (3) under *Daubert*, expert testimony on footwear impressions (Docket # 52). On June 25, 2004, the Court received evidence on the *Daubert* issue and heard oral argument on all motions. After reviewing the evidence and the parties' memoranda, the Court reaches the following conclusions:

1. If the Defendant takes the stand, his prior conviction for forgery may be admitted under Federal Rule of Evidence 609(a)(2) and his prior conviction for theft by receiving stolen property may be admitted under Rule 609(a)(1);

2. If the Government establishes the necessary foundation, evidence of the incidents involving receipts from a Burger King and the theft of a safe belonging to the Defendant's former roommate may be admitted under Rule 404(b); and,

3. Expert testimony regarding footwear impression evidence may be admitted.

## II. Prior Convictions

### A. Background

Without referring to specific past convictions, the Defendant asked the Court for guidance regarding the admissibility of "*any* prior convictions ... in the event that he chooses to testify." (*See* Def.'s Mot. Regarding Convictions (Docket # 50)) (emphasis added). The Government cites four prior convictions as involving "theft and/or dishonesty" (*See* Gov't Resp. Regarding Convictions (Docket # 60)) under Rule 609: robbery reduced to aggravated assault, theft by receiving sto-

len property, and second-degree forgery, all on March 5, 2001, in Arkansas; and possession of a controlled substance, on April 22, 2003, also in Arkansas.[1]

The robbery, theft by receiving and forgery charges stem from an incident on April 24, 2000. The Defendant presented a forged receipt at a Wal–Mart and, when the store attempted to detain him, he almost struck a Wal–Mart employee with his car. Mahone possessed a stolen credit card at the time. Count I of the charging information alleged Mahone "unlawfully, feloniously, and with the purpose of committing a theft or resisting apprehension immediately thereafter ... employed or threatened to employ physical force upon Terry Woodford." (Exhibit A to Docket # 60). The charge was later reduced to aggravated assault. Count II alleged Mahone "feloniously did receive, retain or dispose of stolen property, to wit credit cards, such being the property of John Wilroy...." Count III alleged second-degree forgery, stating Mahone forged a Wal–Mart receipt in an attempt to defraud the store. On March 5, 2001, Mahone was found guilty of the charges. He served seven days in jail, was placed on 60 months of probation, ordered to undergo psychological counseling, was fined $500.00, and was prohibited from having contact with Wal–Mart stores.

Less information is available regarding the possession of controlled substance conviction. A one-page Ticket Information, dated October 18, 2001, imposes a fine and a sentence but details of the crime and penalty are not clear from the record.

Based on this information, the Court concludes under Rule 609 evidence of the Defendant's prior convictions for forgery and theft by receiving stolen property is admissible; however, evidence of the De-

---

1. Exhibits A and B to Docket # 60 are copies of the charging and sentencing documents in the prior convictions.

fendant's prior convictions for robbery reduced to aggravated assault and possession of a controlled substance is not admissible.[2]

## B. Discussion

### 1. Legal Standard

■ Federal Rule of Evidence 609(a) governs admissibility of prior convictions for the purpose of impeaching a witness:

For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and,

(2) evidence that any witness has been convicted of a crime *shall* be admitted if it involved dishonesty or false statement, regardless of the punishment.

(emphasis added). Any felony conviction, whether or not for a crime involving "dishonesty or false statement," is admissible under Rule 609(a)(1) if the district court determines that its probative value outweighs the prejudicial effect on the defendant under Rule 403.[3] *United States v. Grandmont,* 680 F.2d 867 (1st Cir.1982);

*United States v. Mahone,* 537 F.2d 922, 928–29 (7th Cir.1976). However, convictions for felonies or misdemeanors involving "dishonesty or false statement" are admissible under Rule 609(a)(2) without regard to the balancing test of Rule 403. *United States v. Kiendra,* 663 F.2d 349, 353–55 (1st Cir.1981). Admission of these offenses is mandatory, not within the discretion of the district court. *Id.; United States v. Tracy,* 36 F.3d 187, 192 (1st Cir.1994), *cert. denied,* 514 U.S. 1074, 115 S.Ct. 1717, 131 L.Ed.2d 576 (1995) (citing H.R. Conf. Rep. No. 93–1597, 93rd Cong., 2d Sess. 9, U.S. Code Cong. & Admin.News 1974, 9. 7098 (1974)). Given the admission requirement of Rule 609(a)(2), the Court will first consider the prior convictions under that subpart.

### 2. Rule 609(a)(2): Mandatory Admissions

#### a. Forgery

■ Forgery is plainly within Rule 609(a)(2)'s scope of crimes of dishonesty and false conduct. Congress explained such crimes include "perjury, false statement, criminal fraud, embezzlement or false pretense, or any other crime in the nature of the *crimen falsi,* the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify untruthfully." *Id.* Though forgery is not specifically listed in the congressional report, forgery clearly "involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Indeed, other circuits that

---

**2.** The Government did not contend that either the assault or possession of a controlled substance convictions should be admitted, absent circumstances not present in the pending motion; however, the Defendant did not limit the motion in limine to the forgery and theft by receiving stolen property charges and therefore the Court is ruling in limine on the admissibility of all prior known convictions.

**3.** Rule 403 reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste or time, or needless presentation of cumulative evidence.

have considered forgery in light of Rule 609(a)(2) have concluded it is a crime of dishonesty. *E.g., United States v. Owens,* 23 Fed. Appx. 550 (7th Cir.2001); *United States v. Newman,* 849 F.2d 156 (5th Cir. 1988); *United States v. Bay,* 748 F.2d 1344 (9th Cir.1984) (superseded on other grounds). This Court holds that the Defendant's prior conviction for forgery must be admitted under Rule 609(a)(2).

### b. Theft by Receiving

Whether theft by receiving is a crime of dishonesty under Rule 609(a)(2) is a question not so easily answered. A series of cases between 1979 and 1982 shaped the First Circuit's treatment of such crimes under Rule 609(a)(2). In *United States v. Brown,* 603 F.2d 1022 (1st Cir.1979), the First Circuit cited then-Judge Burger's opinion in *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), that "acts of deceit, fraud, cheating, or stealing ... are universally regarded as conduct which adversely reflects on a man's honesty and integrity." 603 F.2d at 1029. Accordingly, the *Brown* court ruled a defendant's burglary and larceny convictions were admissible under Rule 609(a)(2) as "having a bearing on honesty which is directly related to credibility." *Id.* Almost two years after *Brown,* the First Circuit reinforced its broad interpretation of crimes of dishonesty in *United States v. Del Toro Soto,* holding a defendant's prior grand larceny conviction "could certainly be introduced under [Rule 609(a)(2)] on the general

question of the defendant's credibility." [4] 676 F.2d 13, 18 (1st Cir.1982). However, only months after *Del Toro Soto,* the First Circuit tempered its reading of crimes of dishonesty in *United States v. Grandmont,* holding a defendant's prior robberies, which were, in fact, purse snatchings, were not perpetuated by deceitful or fraudulent means and were not, therefore, admissible under Rule 609(a)(2). 680 F.2d at 871. *Grandmont* remains the First Circuit's stance on robberies under the rule and, by extension, it seems, on the crime of receipt of stolen property.[5]

Here, the record does not establish whether the Defendant's receipt of the stolen credit card was a crime perpetuated by deceitful or fraudulent means, though it seems highly probable. Ultimately, the Court need not reach a decision on the sparse record before it regarding the theft by receiving conviction and Rule 609(a)(2) because, as discussed below, the conviction is admissible under Rule 609(a)(1).

### c. Robbery Reduced to Aggravated Assault

■ *Grandmont* specifically addressed robbery as a crime of dishonesty under Rule 609(a)(2), saying, "robbery *per se* is not a crime of dishonesty within the meaning of 609(a)(2)" and is not admissible under Rule 609(a)(2) "absent a showing that it was perpetuated by deceitful or fraudulent means." 680 F.2d at 871. No such showing has been made in this case;

---

4. During this time, the First Circuit also addressed the issue in *United States v. Kiendra,* 663 F.2d 349 (1st Cir.1981), though it did so only obliquely. The court of appeals recognized the district court admitted a defendant's conviction for possession of a stolen vehicle and receipt of stolen goods as crimes of dishonesty but noted the point had not been challenged and was not being reviewed on appeal.

5. The complexity of the First Circuit's treatment of this issue is reflected in the split among other circuits on the question. *Compare, e.g., United States v. Foster,* 227 F.3d 1096 (9th Cir.2000) (concluding receipt of stolen property is not a crime of dishonesty) *with U.S. Xpress Enter., Inc. v. J.B. Hunt Transport, Inc.,* 320 F.3d 809 (8th Cir.2003) (holding receipt of stolen property constitutes crime of dishonesty); *see generally United States v. Papia,* 560 F.2d 827 (7th Cir.1977) (explaining split among circuits).

therefore, the Court will not admit the conviction as a crime of dishonesty.

■ Similarly, assault is not a crime of dishonesty under Rule 609(a)(2). *United States v. Meserve*, 271 F.3d 314, 328 (1st Cir.2001) (stating "609(a)(2) requires some element of deceit, untruthfulness, or falsification which would tend to show an accused would be likely to testify untruthfully, elements not readily apparent in assault").

### d. Possession of Controlled Substance

■ The dearth of information available regarding this conviction prevents the Court from determining whether it is a crime of dishonesty under Rule 609(a)(2). Absent such evidence, the Court declines to admit the prior conviction under that rule.

### 3. Rule 609(a)(1): Probative Value/Prejudicial Effect

■ To balance probative value and prejudicial effect under Rule 609(a)(1), the Court must consider a number of factors: (1) whether the nature of the crime bears on the defendant's credibility and veracity; (2) the defendant's conduct since the conviction and whether the conviction is remote in time; (3) whether similarities between the conviction and the pending charges make it more likely a jury would use the evidence improperly; (4) whether admission will affect the defendant's decision to testify; and, (5) the centrality of the defendant's credibility to the issue at trial. *Grandmont*, 680 F.2d at 872 n. 4; *Gordon*, 383 F.2d at 940–41. The Court must also consider Rule 609(a)(1)'s threshold requirement that the crime was punishable by death or imprisonment in excess of one year. The defendant bears the burden of showing the trial court should exclude evidence of his prior convictions. *Gordon*, 383 F.2d at 940.

### a. Theft by Receiving

■ The probative value of the Defendant's conviction for theft by receiving stolen property outweighs any prejudicial effect of admitting the evidence. The nature of the crime reflects on the Defendant's credibility and veracity; the conviction occurred in 2000 and the Defendant was on probation from the conviction when arrested on the instant charges; and the difference between possessing a stolen credit card and robbing a bank is sufficient that a jury will not likely consider it "propensity" evidence. While the Defendant's credibility may be a central issue at trial if he chooses to testify, the possibility that admission of this evidence will discourage him from taking the stand is not sufficient to outweigh its probative value. In *Gordon*, then-Judge Burger explained the court should only weigh the effect admission would have on the defendant's taking the stand where it has determined the prior conviction is otherwise admissible. 383 F.2d at 941 n. 11. *Gordon* suggests the court refer back to whether the prior conviction bears on the defendant's credibility and veracity: "[T]he judge may want to evaluate just how relevant to credibility the prior convictions are; for example, a recent perjury conviction would be difficult to ignore even where the defendant's testimony would be of great importance." *Id.* Here, the Defendant's prior (and recent) conviction for theft by receiving stolen property is impossible to ignore, even if it affects his decision to testify. Further, the conviction was punishable by a term of imprisonment in excess of one year. *See* Ark.Code §§ 5–36–106, 5–4–401(a)(4).

### b. Robbery Reduced to Aggravated Assault and Possession of Controlled Substance

■ Neither of the remaining convictions at issue bears on the Defendant's

credibility or veracity. Though the convictions occurred close in time to the instant charges, and though the convictions are sufficiently dissimilar to the instant charge that it is unlikely a jury would consider this propensity evidence, the record before the Court does not establish that the convictions relate to the Defendant's propensity to testify truthfully such that they can be admitted under Rule 609(a)(1). *See Meserve*, 271 F.3d at 328.

## C. Prior Conviction Conclusion

For the reasons stated above, in the event the Defendant takes the stand, his prior conviction for forgery is admissible under Rule 609(a)(2) and his prior conviction for theft by receiving stolen property is admissible under Rule 609(a)(1). However, based on the record before the Court at this time, the Defendant's prior convictions for robbery, reduced to aggravated assault, and possession of a controlled substance are not admissible under Rule 609(a)(1).

## III. Other Acts

### A. Background

The Defendant moved to exclude (1) evidence relating to an incident on November 15, 2003, when he allegedly received approximately $1,200.00 in receipts from a Burger King from his girlfriend, Zuzana Preikova, and failed to deposit the money in a bank's night deposit box, as she asked him to do; and, (2) evidence relating to an incident on November 20, 2003, when he allegedly stole a safe containing $265.00 from a former roommate. The Defendant argues these incidents bear no similarity to the conduct charged here and are precluded by Federal Rules of Evidence 403 and 404(b). The Government responds the

incidents should be admitted under Rule 404(b) as reflective of the Defendant's motive to commit the offenses charged and identity.

### B. Discussion

### 1. Legal Standard

 Federal Rule of Evidence 404(b) provides, in part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Rule 404(b) functions to exclude evidence of a defendant's prior bad acts as proof of his criminal character or propensity to commit crimes of the sort for which he is on trial. To admit evidence of prior bad acts for other purposes under the rule, a court must find the evidence passes two tests. *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir.2000). First, the evidence must have a "special relevance" to an issue in the case, such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." *Id.* (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir.1996)). The "special relevance" cannot be the defendant's propensity to commit crimes. *United States v. Fields*, 871 F.2d 188 (1st Cir.1989). Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[6] *Var-*

---

6. Rule 403 reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste or time, or needless presentation of cumulative evidence.

*oudakis*, 233 F.3d at 118; *United States v. Decicco*, 370 F.3d 206, 211 (1st Cir.2004) (citing *Varoudakis* ). In addressing the probative value of other acts, the First Circuit has considered the remoteness in time of the other acts and the degree of resemblance between the other acts and the crime charged. *Id.; Fields*, 871 F.2d at 197.

When prior bad act evidence is offered to prove a motive for the crime, courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury. *Varoudakis*, 233 F.3d at 118 (quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure*, § 5240 (1978)). In *United States v. Varoudakis*, the First Circuit distinguished between admissible motive evidence and inadmissible propensity evidence. In that case, a district court admitted evidence of a defendant's prior burning of a leased car in his trial for arson in connection with the burning of his restaurant. The district court concluded the car fire evidence was specially relevant to his motive because, in both instances, he allegedly committed arson to alleviate a financial burden by collecting insurance proceeds. The First Circuit vacated the district court's judgment, ruling the evidence involved an improper propensity inference:

> As proof of motive, the car fire testimony is offered as circumstantial evidence that [the defendant] committed the [restaurant] fire. It involves an inference of propensity as "a necessary link in the inferential chain." *Frankhauser*, 80 F.3d at 648. Put most simply, the government argues that [the defendant's] commission of the car fire arson in response to financial stress makes it more likely that he committed the restaurant arson in response to financial stress. Contrast this forbidden inference with the permissible inference to be drawn in which the prior bad act—say, a botched

robbery by the defendant that was frustrated by the ineptitude of his cohort—provided the motive for the defendant's subsequent assault on his cohort. There, the prior bad act would provide circumstantial evidence of the commission of the assault without the involvement of any propensity inference.

233 F.3d at 120.

## 2. Burger King Receipts

■■■ The incident involving the Burger King receipts bears a special relevance to the crimes charged in this matter because it supports the Government's case for the Defendant's motive. Ms. Preikova told police officers the Defendant said he participated in the activities at the bank because he had lost the Burger King receipt money and was trying to "help her out with the money from the missing bank deposit." (*See* Exhibit 2 to Gov't Resp. Regarding Other Acts (Docket # 61)). The evidence is not being used to demonstrate the Defendant's propensity to commit crimes and does not require propensity as a necessary link in the inferential chain. This situation is distinguishable from the facts considered in *Varoudakis*, as evidence of the Burger King receipt incident explains why the Defendant may have committed the crime charged, not that the Defendant has committed a crime similar to the one charged and, therefore, likely committed the crime charged.

■■■ Further, the probative value of this evidence outweighs any prejudicial effect of its admission. While the failure to make a bank deposit differs greatly from bank robbery—it is one thing to fail to deposit and quite another to make a forced withdrawal—there is little danger the evidence will sway the jury towards a conviction on an emotional basis. Contrary to defense counsel's argument, the alleged incident was not remote in time to the

crime charged—it occurred four days before the bank robbery. The closer proximity between the two events enhances the probative value.

### 3. Safe Theft

■ The Government contends the Defendant committed the bank robbery on November 19, 2003, and stole the safe from his former roommate on November 20, 2003. The Defendant left a note admitting to having taken property and explaining he needed the money to "get out of here." (See Exhibit 2 to Gov't Resp. Regarding Other Acts (Docket # 61)). The Defendant was arrested in New Hampshire on December 12, 2003, while in possession of a stolen vehicle. Police officers located the safe inside the vehicle. Evidence of the alleged safe theft bears a special relevance to the crimes charged because it establishes the Defendant's identity as the person who stole the vehicle and is, therefore, intertwined with the stolen vehicle charge. The evidence does require propensity be a necessary link in the inferential chain; instead, it supports the Government's allegation that the Defendant stole the vehicle, since the safe that he also allegedly stole was recovered from the vehicle.

Moreover, the probative value of such evidence outweighs any prejudicial affect resulting from its admission. As with evidence regarding the Burger King receipts, the alleged safe theft does not make it likely a jury will convict the Defendant on an emotional basis. At the same time, the evidence is highly probative of whether he is guilty of interstate transportation of a stolen vehicle. Additionally, the probative value is enhanced by the closer proximity of theft of the events.

### C. Other Acts Conclusion

If the Government establishes the foundation under Rule 404(b), evidence of alleged acts involving the Burger King receipts and the theft of a safe from the Defendant's former roommate may be admitted. The Defendant's Motion in Limine is DENIED.

### IV. Expert Testimony: Footwear Impression Evidence

#### A. Background

■ The Government seeks to introduce footwear impression evidence through the testimony of Cynthia D. Homer, a forensic scientist with the Maine State Police Crime Laboratory in Augusta, Maine. At an exhaustive Daubert hearing before this Court on June 25, 2003, Ms. Homer testified at length to the methodology and principles of footwear impression evidence as a forensic science. The Defendant challenges the evidence on four main grounds: (1) that the Government failed to demonstrated Ms. Homer's qualifications as an expert; (2) that the Government failed to show her methodology is reliable; (3) that Ms. Homer failed to follow the proposed methodology in this instance; and (4) more generally, that expert testimony is unnecessary because the footwear evidence can be evaluated by a lay person. This Court is required to make a preliminary evaluation of the reliability of expert testimony, even in the absence of an objection. Hoult v. Hoult, 57 F.3d 1, 5 (1st Cir.1995). The Government, as the proponent of the evidence, has the burden to show that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion". United States v. Mooney, 315 F.3d 54, 63 (1st Cir.2002) (quoting Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir.1998)). This Court will, therefore, review the evidence to determine whether it has met Daubert standards generally and will address the Defendant's objections specifically.

## B. Discussion

### 1. Legal Standard

Federal Rule of Evidence 702 provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[7]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held Rule 702 imposes a gate-keeping role on the trial judge to ensure an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1997) (holding *Daubert* applies to technical and other specialized expert testimony).[8] A preliminary question must be the qualification of the person to be an expert witness, since the relaxation of the "usual requirement of firsthand knowledge or observation" is premised on "an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786. In examining whether to admit the substance of a proffered expert's testimony, a court should consider the following factors identified by *Daubert:* (1) whether the theory or technique can be or has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential error rate; and, (4) the level of the theory or technique's acceptance within the relevant discipline. 509 U.S. at 593–94, 113 S.Ct. 2786. These factors, however, are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability. *United States v. Mooney,* 315 F.3d 54, 61 (1st Cir.2002) (citing *Kumho Tire,* 526 U.S. at 153, 119 S.Ct. 1167). The trial judge may even determine which of the *Daubert* factors to apply depending on the nature of the issue, the expert's particular expertise, and the subject of her testimony. *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167.

*Daubert* does not require "the party who proffers the expert testimony carry the burden of proving to the judge that the expert's assessment of the situation was correct." *Mooney,* 315 F.3d at 63 (quoting *Ruiz–Troche,* 161 F.3d at 85). Once a trial judge determines the reliability of the expert's methodology and the validity of her reasoning, the expert should be permitted to testify as to inferences and conclusions she draws from it and any flaws in her opinion may be exposed through cross-examination or competing expert testimony. *Id.*

### 2. Compliance with *Daubert* Standards Generally

The *Daubert* interpretation of Rule 702 and its 2000 amendment require the trial judge to evaluate an expert's proposed testimony for both reliability and relevance

---

7. Rule 702 was amended in 2000 to reflect the holdings in *Daubert* and *Kumho,* F.R.E. Committee Note.

8. *Daubert* and *Kumho,* together with *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (trial court's decision to admit or exclude expert testimony will be reversed only for abuse of discretion), have become known as the *Daubert* trilogy. *See The Manual For Complex Litigation, Fourth,* § 23.2 (2004 ed.)

prior to admitting it. *Daubert,* 509 U.S. at 589–90, 113 S.Ct. 2786; *Ruiz–Troche,* 161 F.3d at 80. This Court need not tarry with the general requirements of *Daubert.* Ms. Homer's lengthy testimony provided ample evidence that her proposed testimony meets or exceeds *Daubert* requirements for admissibility. The science of footwear analysis is neither new nor novel; expert testimony on footwear comparisons has been admitted in courts in the United States for years.[9] *United States v. Rodgers,* 85 Fed. Appx. 483, 486–87 (6th Cir. 2004), *cert. denied,* — U.S. ——, 124 S.Ct. 2192, 158 L.Ed.2d 753 (2004); *United States v. Ross,* 263 F.3d 844, 846–47 (8th Cir.2001); *United States v. Allen,* 207 F.Supp.2d 856, 866 (N.D.Ind.2002); *United States v. Youngberg,* 43 M.J. 379 (C.M.A.1995).[10] Ms. Homer established that the theory and technique of footwear comparisons have been tested, that the science has been subject to peer review and publication, that the scientific technique has been evaluated for its known or potential error rate, and that the science of footwear analysis has by now been generally accepted. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786; *Mooney,* 315 F.3d at 62.

As the First Circuit explained in *Ruiz–Troche, Daubert* imposed a "special relevance requirement" for the admission of expert testimony. *Ruiz–Troche,* 161 F.3d at 81. The testimony must be not only relevant under Rule 402, but in the "incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Id.* Even under this heightened standard, Ms. Homer's proffered expert opinion is also relevant, linking the Defendant to the scene of the bank robbery.

The Court will now turn to the Defendant's specific issues.

### 3. Defendant's Specific Objections

#### a. Ms. Homer's Qualifications

The Defendant attacked Ms. Homer's qualifications to give expert testimony on footwear comparisons. The attack centered on her membership in the International Association for Identification (IAI). He noted that the IAI proclaimed itself the "most prestigious professional association of its kind in the world...." The Defendant argued Ms. Homer status as an active member of the IAI entails "nothing more than being employed as a forensic examiner and paying a yearly fee." (*See* Def.'s Post–Hearing Mem. at 5–6 (Docket # 69)). He went on to point out Ms. Homer lacked the necessary combination of education and experience which the IAI requires for certification as a "Footwear Examiner".

9. For cases in which federal appellate courts have referred in passing to the trial court's admission of footwear evidence both pre and post-*Daubert,* see, e.g., *Hopkins v. Cockrell,* 325 F.3d 579, 581 (5th Cir.2003); *Love v. Young,* 781 F.2d 1307 (7th Cir.1986); *United States v. Givens,* 767 F.2d 574, 582–83 (9th Cir.1985), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985); *but see United States v. Ferreira,* 821 F.2d 1 (1st Cir.1987) (trial judge's exclusion of shoeprint impression evidence upheld); *United States v. Stabler,* 490 F.2d 345 (8th Cir.1973) (footprint evidence excluded on foundation grounds). Despite its venerable lineage, the science of footwear analysis is not, of course, immune from a successful *Daubert* challenge. *Compare United States v. Hines,* 55 F.Supp.2d 62, 67 (D.Mass.1999)(limiting the admissibility of expert handwriting analysis testimony) *with Mooney,* 315 F.3d at 63 (admitting expert handwriting analysis testimony).

10. For pre-*Daubert* appellate decisions on expert testimony on footwear comparison, *see e.g. United States v. Rose,* 731 F.2d 1337, 1345–47 (8th Cir.1984); *United States v. Ferri,* 778 F.2d 985, 988–90 (3rd Cir.1985) cert. denied 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); *United States v. Hendershot,* 614 F.2d 648, 654 (9th Cir.1980).

The Government submitted Ms. Homer's curriculum vitae, which describes her training and qualifications in the area of forensic science. Gov't Ex. A. Ms. Homer received a Bachelor of Science degree in chemistry in 2000 and a Masters in Forensic Science in 2001. She has over two years experience as a forensic scientist at the State Police Crime Lab and has undergone substantial training in latent print development, footwear and tire track analysis, forensic photography, and crime scene processing, among other areas. Ms. Homer is a member of a number of professional associations and instructed numerous groups on topics such as crime scene processing and latent print detection. She also undergoes yearly proficiency testing in the disciplines in which she specializes. The sum of Ms. Homer's academic training and practical experiences qualifies her as an expert to opine on this issue. *See United States v. Rose*, 731 F.2d 1337 (8th Cir.1984) (qualifying police department employee as expert on shoe-print comparisons; pre-*Daubert* case).

■ Ms. Homer's qualifications as an expert witness do not hinge on whether she has been certified as a footwear examiner by the IAI. There is no evidence that the IAI is the sole footwear examiner certifying body or that its footwear examining certificate is a prerequisite for expertise in the field. Moreover, an expert witness need not be an outstanding practitioner in the field nor have certificates of training in the particular subject. *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir.1977).

### b. *Daubert* Standards: Methodology

*Daubert* and Rule 702 mandate the expert testimony be the "product of reliable principles and methods." F.R.E. 702; *Ruiz–Troche*, 161 F.3d at 81 ("[M]ethodology remains the central focus of a *Daubert* inquiry"). The Defendant challenged Ms. Homer's methodology as follows: (1) he contends the methodology is flawed, because there are no "objective identification standards," [11] (*See* Def.'s Post–Hearing Mem. at 3 (Docket # 69)); and, (2) in the absence of supporting data, the expert's conclusions are merely lay observations a fact finder would be equally competent to make. *Id.*

Ms. Homer explained the testing process used by footwear impression examiners as following the acronym ACE–V: *A*nalysis; *C*omparison; *E*valuation; and *V*erification. The first stage of the process entails analyzing an impression taken from the crime scene for class characteristics, or markings common to all shoes of that type, and unique or accidental characteristics, peculiar to the shoe that made the imprint. During the comparison phase, the crime scene impression is matched against an impression of the shoe submitted for comparison. The prints may be compared by superimposing one image over the other or by viewing the images side by side. In the final stage, the examiner applies her training and expertise to evaluate the comparisons and draw conclusions. The conclusions are then re-examined by another examiner according to the ACE process.[12,13]

---

**11.** In support of his argument, Defendant cites *United States v. Hines*, 55 F.Supp.2d 62 (D.Mass.1999), in which certain opinions of a handwriting expert were excluded on *Daubert* grounds. As the First Circuit said in *Mooney*, however, *Hines* has no binding effect. *Mooney*, 315 F.3d at 63. A decision to admit or exclude is often grounded on the "particular facts and circumstances of the particular case." *Id.* (quoting *Kumho Tire*, 526 U.S. at 158, 119 S.Ct. 1167).

**12.** When questioned by the Court, Ms. Homer was uncertain whether a reviewing examiner knows the first examiner's conclusions prior to verification or whether she approaches verification "blind." Ms. Homer's unfamiliarity with this particular aspect of the methodology

Ms. Homer testified the ACE–V methodology's known error rate is zero. The Defendant takes issue with this point, arguing Ms. Homer "merely concludes that if the methodology is followed there can be no error." (*See* Def.'s Post–Hearing Mem. at 4 (Docket # 69)). Indeed, Ms. Homer testified the error rate of the process itself is zero, meaning any error is the result of examiner error, either in the application of the process or in reaching a particular conclusion. The Defendant's contention is without merit in this context: *Daubert* merely requires the proponent demonstrate the known or potential error rate of the methodology and the Court is satisfied the Government has done so in this case. To the extent the Defendant's argument is appropriate, it goes to weight, not admissibility.

Finally, the Government established the methodology used has been peer-reviewed and is generally accepted in the forensic community. Ms. Homer proffered lists of journals and publications discussing the methodology of examining footwear and other impression evidence, Gov't Ex. B–3, B–4; an excerpt from *Footwear Identification*, by Michael Cassidy, Gov't Ex. B–1; and an article entitled "A Historical Overview of Track Impression Evidence," by Ernest Hamm, Gov't Ex. B–2.

The reliability of the ACE–V methodology has been upheld in recent decisions as applied to fingerprint identifications. *Allen* 207 F.Supp.2d at 866 (collecting authority). In *Allen*, the court saw "no reason not to extend the reasoning of these opinions to the technique of footwear impression evidence which is substantially the same as that of fingerprint impressions." *Id.*; *see also United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir. 1980) (evaluating footprint impression evidence lifting technique under pre-*Daubert* framework).

While footwear impression evidence may appear to the Defendant a simple matching process not requiring any specialized skill, and Ms. Homer's testimony will "provide undeserved weight to a comparison which the jury as fact finder is equally qualified to make," (*See* Def.'s Post–Hearing Mem. at 6 (Docket # 69)), it is apparent the process requires a critically trained eye to ensure accurate results. The Defendant's contention that any lay person can perform the comparisons presumes any lay person will know what to look for and how to apply the information—the significant versus insignificant markings and the weight to ascribe each. In this way, the examiner functions like a radiologist, directing attention to the relevant aspects of the impression or medical image. That the conclusion is readily apparent after the professional explains the image more likely speaks to the effectiveness of the professional, not the simplicity of the science.

Further, even if the Court accepts the Defendant's contention that a lay person could arrive at the conclusion for herself, Ms. Homer's testimony is admissible under Rule 702 because it will undoubtedly assist the trier of fact in determining whether the impressions from the crime scene match those from the shoes.[14]

is not a sufficient basis to determine the methodology is unreliable.

13. The Defendant has also challenged Ms. Homer's application of the ACE–V methodology to the examination of the evidence in this case. This issue is the proper scope of the Defendant's cross-examination of Ms. Homer, not a motion *in limine* ruling.

14. Courts admitted footwear *impression* evidence under pre-*Daubert* frameworks, also. *E.g., United States v. Ferri*, 778 F.2d 985, 988–90 (3d Cir.1985); *see McDonnell v. United States*, 455 F.2d 91 (8th Cir.1972), *cert. denied*, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973) (footprint evidence inadmissible in absence of expert testimony).

### c. *Daubert* Challenge: Application

Finally, the Defendant challenges Ms. Homer's specific application of the methodology. F.R.E. 702 ("[A]n expert ... may testify [if] the witness has applied the principles and methods reliably to the facts in the case"). The Defendant contends that there was no evidence of the qualifications of the individual who peer reviewed her conclusions and no evidence that the review was "blind." Further, he argues that, contrary to her own testimony about appropriate protocol, she failed to collect all the footwear impressions, leaving the collection of a number of footwear impressions to a police officer whose qualifications were never revealed. The record reveals that her conclusions were reviewed within the department by another qualified footwear examiner and her verification process was separately confirmed. The police officer who took the samples was a trained member of the Maine State Police Evidence Response Team and Ms. Homer had assigned the collection duty to him with knowledge of his level of training and expertise. These defense arguments go to the weight and credibility, not to its admissibility. *United States v. Shea,* 211 F.3d 658, 668 (1st Cir.2000). Even assuming *arguendo* the Defendant pointed out flaws in Hs. Homer's testimony, *Daubert* itself instructs us that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786; *Shea,* 211 F.3d at 668.

### C. Expert Testimony Conclusion

The Court accepts Ms. Homer as an expert in the field of forensic science, specifically the subfield of footwear impression collection and analysis, finds her methodology for analyzing footwear impression evidence is reliable, and concludes that her proffered expert footwear impression testimony is admissible under the standards set forth both in Rule 702 and *Daubert.*

## V. Conclusion

Accordingly, the Court holds:

1. The Defendant's Motion in Limine to exclude references to prior convictions (Docket # 50) is GRANTED in part and DENIED in part;

2. The Defendant's Motion in Limine to exclude references to other alleged acts (Docket # 51) is DENIED, provided the Government establishes the foundation necessary to introduce the evidence; and,

3. The Defendant's Motion in Limine to exclude expert testimony regarding footwear (Docket # 52) is DENIED.

SO ORDERED.