**William B. RATLIFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8651.**

Court of Appeals of Alaska.

April 15, 2005.

David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, Judge.

In late December 2002, a burglar broke into the Alaska Laundry in Juneau and stole almost $2000 from the safe. In the process of opening the safe, the burglar strewed the safe's powdery fireproofing material across the floor. The burglar left many shoeprints in this powder. When the police arrived to investigate the burglary, they "lifted" some of these shoeprints. The preserved shoe impressions revealed that the sole of the burglar's shoe had a waffle pattern, and that the sole was embossed with the letters "t", "n", "i", "e", and "s".

The police suspected that William B. Ratliff might have been involved in this burglary. Ratliff had an appointment with his probation officer the next afternoon, so a police officer was sent to interview Ratliff when Ratliff arrived for this appointment.

The officer asked Ratliff if he had been in the Alaska Laundry the day before. Ratliff declared that he had never been in that laundry. The officer then asked Ratliff to show him the bottoms of his shoes. The officer could see that the soles of Ratliff's shoes appeared to match the shoeprints found at the laundry, so the officer left the interview room to make a telephone call. Ratliff took this opportunity to run from the building. Ratliff was arrested the next day while he was purchasing new shoes at a shopping mall.

Ratliff was subsequently tried and convicted of burglary, theft, and criminal mischief. In this appeal, Ratliff challenges the admissibility of certain testimony offered by the government at his trial.

Lesley Hammer, a criminologist employed at the State Crime Laboratory, compared the shoeprints left at the laundry with the patterns on the bottom of Ratliff's shoes. Hammer ran side-by-side comparisons, and she also performed overlay comparisons. She found that some of the shoeprints at the laundry were "consistent" with Ratliff's shoes—i.e., they were made by Ratliff's shoes or by other shoes of the same brand or similar manufacture. However, with respect to two of the shoeprints, Hammer concluded that these prints were made by Ratliff's particular shoes (not just shoes of the same brand or similar manufacture).

In the superior court, Ratliff objected to Hammer's testimony. He argued that shoeprint comparison was not valid science under the test enunciated by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[1] and later adopted by the Alaska Supreme Court in *State v. Coon.*[2]

Superior Court Judge Larry R. Weeks held an evidentiary hearing on this issue. At

1. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (construing the federal evidence rules governing expert testimony).

2. 974 P.2d 386 (Alaska 1999) (adopting *Daubert* as the proper interpretation of Alaska's rules governing expert testimony).

this hearing, Hammer was questioned regarding her training and experience, and also regarding the procedures and methods used by her and other shoeprint examiners. Hammer described how shoeprints are taken and preserved, and she described how these prints are then compared to particular shoes.

At the conclusion of this hearing, Judge Weeks concluded that the type of shoeprint analysis performed by Ms. Hammer was not "scientific" for purposes of the *Daubert–Coon* rule. Alternatively, Judge Weeks found that the type of shoeprint analysis described by Ms. Hammer met the *Daubert* criteria.[3] Finally, Judge Weeks concluded that Hammer's testimony was admissible under Evidence Rule 702 because her specialized knowledge and training in this area would assist the jury in understanding the shoeprint evidence and assessing its significance.

■ In this appeal, Ratliff takes issue with Judge Weeks's conclusion that the *Daubert–Coon* test did not apply to Hammer's testimony—*i.e.*, the judge's conclusion that shoeprint analysis does not depend on the sort of scientific methodology governed by *Daubert* and *Coon*. Ratliff takes the position that the *Daubert* criteria apply, not just to scientific testimony, but to *all* expert testimony that is based on technical training or specialized knowledge. Accordingly, Ratliff contends that Judge Weeks abused his discretion when he ruled that it was unnecessary to subject Hammer's testimony to a *Daubert* analysis. Ratliff asks us to vacate Judge Weeks's ruling, to remand his case to the superior court, and to direct Judge Weeks to conduct a *Daubert* analysis of Hammer's testimony.

Ratliff relies on the Supreme Court's decision in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In *Kumho Tire*, the Supreme Court concluded that the admissibility of *all* expert testimony, not just *scientific* expert testimony, is dependent upon a showing of relevance and reliability.[4] The Court suggested that the *Daubert* criteria for evaluating the validity of scientific evidence might be pertinent outside a scientific context—although the Court conceded that other factors (*i.e.*, factors not mentioned in *Daubert*) might also have a bearing on the reliability of testimony based on technical or other specialized knowledge.[5]

In rejecting a fixed dividing line between "scientific" evidence and other evidence based on technical or other specialized knowledge, the Court noted:

> [I]t would prove difficult, if not impossible, for judges to administer evidentiary rules under which a gatekeeping obligation depended upon a distinction between "scientific knowledge" and "technical" or "other specialized" knowledge. There is no clear line that divides the one from the others [, and] conceptual efforts to distinguish the two are unlikely to produce clear legal lines capable of application in particular cases.

*Kumho Tire*, 526 U.S. at 148, 119 S.Ct. at 1174.

At the same time, however, the Supreme Court emphasized that it was not saying that all of the *Daubert* factors necessarily applied to all kinds of expert analysis.[6] The ultimate question is whether the offered evidence is based on valid principles and methodology.[7] In answering this question, the Supreme Court declared, trial judges must have leeway in analyzing whether the *Daubert* factors, or some of the *Daubert* factors, are pertinent to the assessment of the methodo-

---

3. On page 275 of the transcript, Judge Weeks's finding is rendered: "I think that Ms. Hammer ... has also testified to things that ... meet the *Daubert* criteria as expressed by Professor Engleride." [*sic*] We assume that Judge Weeks actually said, "Professor Imwinkelried". Professor Edward J. Imwinkelried is the author of numerous articles on *Daubert* and scientific evidence.

4. 526 U.S. at 141, 119 S.Ct. at 1171.

5. 526 U.S. at 147–49, 119 S.Ct. at 1174–75.

6. *Id.*, 526 U.S. at 149–150, 119 S.Ct. at 1175.

7. *Guerre–Chaley v. State*, 88 P.3d 539, 542 n. 4 (Alaska App.2004); *Cf. State v. Coon*, 974 P.2d 386, 395 (Alaska 1999) ("[scientific] testimony [must] be derived by the scientific method [or] based on scientifically valid principles").

logical validity of the particular evidence being offered in each case.[8]

Our supreme court has not yet decided whether to adopt the rule of *Kumho Tire* as a proper interpretation of Alaska evidence law. But even if we were to follow the rule of *Kumho Tire*, that rule would not support Ratliff's position in this appeal.

Ratliff is wrong when he asserts that trial judges are obliged to apply the *Daubert* criteria to all expert testimony. The Supreme Court carefully worded *Kumho Tire* to avoid this result. What *Kumho Tire* requires trial judges to do is *evaluate* whether the *Daubert* factors are pertinent to assessing the methodological validity of the particular challenged evidence in their case.

■ The record shows that Judge Weeks fulfilled this duty. When Ratliff raised his *Daubert* objection, Judge Weeks held a hearing so that Lesley Hammer could explain the principles and methods used by forensic examiners to preserve shoeprints and conduct shoeprint comparisons. Ratliff offered no competing testimony (or any other evidence) on these matters. At the end of this hearing, Judge Weeks concluded that he could adequately assess the methodological validity of the proposed shoeprint testimony without conducting a formal *Daubert* analysis.

*Kumho Tire* holds that a judge's decision on this issue is to be upheld unless it constitutes an abuse of discretion.[9] Here, we find no abuse of discretion.

Hammer's explanation of shoeprint comparison and analysis did not rest on arcane scientific principles, or on the results of experiments or tests that could only be understood and interpreted by experts. Instead, her analysis rested on visual comparisons of physical samples: shoeprints "lifted" from the scene of the crime, the shoes obtained

from Ratliff, and shoeprint transparencies made from Ratliff's shoes.

Hammer explained how these physical examples were created and how they were compared. She acknowledged that a lay person might be able to recognize the salient similarities or differences between a given shoe and a given shoeprint. She explained that her expertise lay in being able to spot small physical abnormalities that might escape a lay person's eye, and in being able to identify (through training and experience) which physical traits were characteristic of a class or group of shoes, as opposed to the physical traits unique to a particular shoe (*e.g.*, individual manufacturing defects or patterns of wear).

Indeed, at the conclusion of Hammer's testimony, when Judge Weeks asked Ratliff's attorney if she had any argument to present regarding the scientific validity (or lack of validity) of Hammer's analysis, the defense attorney had nothing to say. She simply responded, "Your Honor, as far as whether the general techniques [of shoeprint analysis] are acceptable or not, I will just let the Court rule on that."

We doubt that such a response is sufficient to preserve a challenge to Judge Weeks's ruling.[10] But even assuming that this issue was properly preserved for appeal, the fact remains that Ratliff has pointed to nothing in the record that casts doubt on the methodological validity of Hammer's shoeprint comparison and analysis—nothing to suggest that Judge Weeks abused his discretion when he concluded that he could adequately assess the validity of the challenged testimony without going through a formal *Daubert* analysis.

We note that other courts have likewise concluded that the test for evaluating the validity of scientific evidence does not apply

**8.** *Kumho Tire*, 526 U.S. at 150–52, 119 S.Ct. at 1175–76.

**9.** *Id.*, 526 U.S. at 152–53, 119 S.Ct. at 1176.

**10.** *See Hohman v. State*, 669 P.2d 1316, 1325–26 (Alaska App.1983) (holding that when an attorney responded to a relevance objection by simply stating, "I'll accept the ruling from the court", the attorney could not challenge the court's rul-

ing on appeal). *See also Willis v. State*, 57 P.3d 688, 691–92 (Alaska App.2002) (defense attorney failed to advance any grounds to support a request for a mistrial); *Petersen v. State*, 930 P.2d 414, 434 (Alaska App.1996) (defense attorney declined to argue the point or provide any rationale for giving a requested jury instruction); *Cornwall v. State*, 915 P.2d 640, 653 n. 11 (Alaska App. 1996) (same).

to shoeprint analysis. In *People v. Perryman*, the Colorado Court of Appeals held that the older test for evaluating scientific evidence (the *Frye* test) did not apply to shoeprint analysis because the comparison of the defendant's shoes to the prints found at the scene "involve[d] no manipulation of physical evidence" and because "the expert's techniques [were] readily accessible to the jury and not dependent upon familiarity with highly technical or obscure theories".[11] Similarly, in *Belton v. State*, the Georgia Supreme Court held that "the comparison of shoe prints to the external physical characteristics of particular shoes is not a matter of scientific principle or technique".[12] The court explained that the challenged expert testimony "did not deal with scientific principles[,] but with observation and comparison of physical objects, with matters not of science but of skill and experience".[13] The Supreme Court of Maine reached the same conclusion in *State v. Boobar*.[14]

Moreover, as we explained above, Judge Weeks also ruled (in the alternative) that the testimony presented at the hearing satisfied the *Daubert* inquiry. Ratliff does not address this alternative ruling, much less offer any reasons for believing that this ruling was wrong.

We note that other courts have concluded that the type of shoeprint analysis conducted in Ratliff's case meets the *Daubert* test for methodological validity. See *United States v. Allen*, 390 F.3d 944, 949–950 (7th Cir. 2004), and see the extended discussion of this issue in *United States v. Mahone*, 328 F.Supp.2d 77, 87–92 (D.Me.2004).

For these reasons, we conclude that Judge Weeks committed no error when he overruled Ratliff's objection to the shoeprint evidence.

The judgement of the superior court is AFFIRMED.

---

**11.**   859 P.2d 263, 267 (Colo.App.1993).

**12.**   270 Ga. 671, 512 S.E.2d 614, 617 (1999).

**13.**   *Id.*

**14.**   637 A.2d 1162, 1167 (Me.1994).