OPINION
 

 EASTAUGH, Justice.
 

 I. INTRODUCTION
 

 Plaintiff Mritunjoy Sengupta was terminated for cause by the University of Alaska Fairbanks in 1995. In 2002 he unsuccessfully sought reemployment with the university. Sengupta then sued the university and related parties (collectively the university or UAF) for refusing to rehire him. He contended that UAF could not base its refusal to rehire him on his previous termination because that termination was improper for various reasons. Sengupta also claimed that UAF’s refusal to rehire him violated the First Amendment, Title VII of the Civil Rights Act, the Alaska Administrative Procedure Act, and university policies. The superior court rejected all of Sengupta’s claims. Because Sengupta has failed to show that: (1) retaliation for his protected speech was a substantial motivating factor in the university’s refusal to rehire him, (2) he exhausted his administrative remedies under Title VII, (3) proper grounds exist for reopening his previous lawsuit against UAF, or (4) his rights were otherwise violated, we affirm the ruling of the superior court in all respects.
 

 II. FACTS AND PROCEEDINGS
 

 On December 14, 2002 Sengupta sent to UAF Chancellor Marshall Lind a cover letter and resume applying for a professorship at
 
 *575
 
 UAF’s School of Mineral Engineering (SME). On January 23, 2003 UAF Provost Paul Reiehardt sent this response to Sengup-ta:
 

 Your employment as a faculty member with the University of Alaska Fairbanks was terminated for cause in 1995 under circumstances that make you ineligible for future employment with the University. Should you choose to apply for a position, your application will not be considered.
 

 This refusal to rehire is the putative basis for Sengupta’s current lawsuit. But it is also the latest chapter in a long adversarial relationship between these parties. In 1992 and 1993 Sengupta, then a tenured professor at UAF’s SME, brought three grievances against UAF regarding his salary and UAF’s failure to promote him.
 
 [1]
 
 His grievances were heard by Hearing Officer James Parrish in 1994. In ruling against Sengupta, Hearing Officer Parrish found that Sengupta had “repeatedly and purposefully been untruthful” during the grievance proceeding, that he had submitted false documents to the hearing officer, that he had made untruthful statements “both within and without UAF” that were “often designed to degrade his colleagues,” and that he had plagiarized a colleague’s work.
 

 In September 1994, about two months after Hearing Officer Parrish resolved Sengup-ta’s grievances against him, UAF gave Seng-upta a notice of its intention to discharge him for cause. UAF cited the findings in the grievance proceeding as the grounds for termination. At Sengupta’s ensuing pretermin-ation hearing, Hearing Officer Julian Rice determined that collateral estoppel prevented Sengupta from challenging the findings entered in the grievance proceeding and that those findings demonstrated cause for termination. The university accepted nearly all of Hearing Officer Rice’s findings and terminated Sengupta for cause in 1995. After exhausting his administrative remedies, Seng-upta appealed to the superior court.
 
 [2]
 
 In August 1996 Superior Court Judge Jay Hodges affirmed the university’s termination decision. We dismissed Sengupta’s subsequent appeal as untimely.
 
 [3]
 

 In early 1997 Sengupta sued UAF in superior court.
 
 [4]
 
 He alleged that UAF violated his First Amendment rights by firing him for statements he made while he was a UAF employee.
 
 [5]
 
 He also alleged that UAF terminated him because of his race and national origin.
 
 [6]
 
 The superior court granted summary judgment to UAF on all of Sengupta’s claims.
 
 [7]
 
 On appeal, we affirmed the superior court’s decision.
 
 [8]
 

 Sengupta filed the present lawsuit against UAF in April 2003. He alleged that UAF’s refusal to rehire him in 2003 violated the First Amendment, the UAF Faculty Senate Constitution, the Regents’ Policy on Evaluation of Faculty, the Regents’ Grievance Policy, and the Alaska Administrative Procedure Act. He also alleged that UAF’s denial of employment was substantially unfair.
 

 In August 2003 the superior court judge first assigned to the case recused herself and the case was reassigned to Judge Mark I. Wood. Sengupta moved for Judge Wood’s recusal, arguing that the judge had a conflict of interest. Sengupta simultaneously filed a separate document entitled “Plaintiffs Challenge on the Assignment of Judge Mark [I.] Wood.” The superior court denied Sengupta’s recusal motion but did not specifically address Sengupta’s separate “Challenge.”
 

 In April 2004 the superior court granted UAF’s motion for summary judgment on all claims. The court also granted Sengupta’s motion to file a third amended complaint.
 

 
 *576
 
 Sengupta’s third amended complaint asserted a Title VII Civil Rights Act claim, alleging that UAF refused to rehire him because of his race and national origin. UAF moved for summary judgment. On January 10, 2005 the superior court granted summary judgment to UAF on this claim. On the same day, the superior court denied Sengupta’s motion to reopen his 1997 discrimination suit.
 

 Sengupta now appeals the superior court’s summary judgment decisions, its denial of his motion to reopen his 1997 ease, and its apparent failure to rule on his challenge to the assignment of Judge Wood. He also argues that his 1995 termination ease should be reopened.
 

 III. DISCUSSION
 

 A. Sengupta Failed To Demonstrate the Existence of a Genuine Issue of Material Fact Regarding Whether UAF Violated His First Amendment Rights.
 

 Sengupta argues that the superior court erred by granting summary judgment to the university on his First Amendment claim. Sengupta contended in his 1997 lawsuit that UAF fired him in retaliation for statements he made criticizing SME during his tenure as a professor.
 
 [9]
 
 In the present ease, Sengupta again argues that UAF fired him in retaliation for these statements. He reasons that because the 1995 firing violated his constitutional rights, UAF may not rely on it to refuse him new employment. Seng-upta also appears to allege separately that UAF’s 2003 refusal to rehire him was directly motivated by his criticisms of the school. UAF responds that Sengupta has failed to establish a prima facie case of First Amendment retaliation and that his arguments are barred by res judicata and collateral estop-pel.
 

 Summary judgment is appropriate if there is no genuine issue as to any material fact and the party to whom summary judgment was granted is entitled to judgment as a matter of law.
 
 [10]
 
 All reasonable inferences of fact must be drawn in favor of the non-prevailing party (generally the non-movant).
 
 [11]
 
 We review grants of summary judgment de novo.
 
 [12]
 

 The First Amendment prohibits public employers from retaliating against employees or prospective employees for engaging in constitutionally protected expression.
 
 [13]
 
 Public employees who suffer such retaliation may sue under 42 U.S.C. § 1983.
 
 [14]
 
 To establish a prima facie case of First Amendment retaliation, a plaintiff must produce evidence showing:
 

 (1) he was subjected to an adverse employment action, ... (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action.[
 
 15
 
 ]
 

 Sengupta cannot establish a prima facie case that UAF retaliated against him in 2003 simply by attacking his 1995 termination. To prevail on his First Amendment claim, Seng-upta must demonstrate that the adverse employment action at issue — in this case, the
 
 *577
 
 university’s refusal to rehire him — was substantially motivated by his criticisms of the university.
 
 [16]
 
 Sengupta cannot meet this requirement by demonstrating that UAF officials innocently relied upon the outcome of a prior adjudication, even if he could demonstrate that his First Amendment rights were not protected during the prior proceeding. Sengupta must present some evidence that the officials who declined to rehire him in 2003 did so not because he was terminated for cause in 1995, but because of the statements he made criticizing the university pri- or to his termination.
 

 Although it is true that “[generally, a plaintiff need only offer ‘very little’ direct evidence of motivation to survive summary judgment,”
 
 [17]
 
 Sengupta’s proffered evidence did not meet even this limited burden.
 
 [18]
 
 Affidavits by UAF Provost Paul Reichardt and Chancellor Marshall Lind stated that Seng-upta’s application was rejected because of his previous termination and denied that his application was rejected because of Sengupta’s prior statements on public issues. Reichardt and Lind also both asserted in their affidavits that they were not serving in their current positions when Sengupta was terminated in 1995. UAF’s human resources director also stated in an affidavit that Sengupta was ineligible for rehire because UAF had adopted a policy in 1997 of screening out job applicants who have been previously terminated for cause.
 

 Sengupta has presented no evidence that UAF has not uniformly applied the no-rehire policy.
 
 [19]
 
 His contention that this policy is not contained in UAF’s faculty appointment policies ignores the fact that those policies vest the appointment power in the chancellor and his designees.
 
 [20]
 
 Sengupta has not identified, nor have we discovered, any provision in UAF’s faculty appointment policies, the Regents’ Policy, or other university policy that prevents the chancellor from adopting a no-rehire policy.
 

 Sengupta relies on a memorandum by a member of the “Ad Hoc Regents’ Committee on the School of Mineral Engineering” (the “Regents’ report”) written shortly after his termination. He characterizes the report as vindicating his “concerns about academic problems and other management problems.” The three-page memorandum is critical of SME in several respects, including enrollment, retention, and what it terms the faculty’s “woefully low” research efforts. Sengupta argues that the report permits an inference that UAF fired him to “cover up” its failures. (Emphasis omitted.) But even if the report relied on by Sengputa raised a factual question regarding UAF’s motives for firing him in 1995,
 
 [21]
 
 it would not give rise to a further permissible inference that different UAF officials retaliated against Sengupta in 2003 by refusing to rehire him more than seven years after the 1995 report allegedly vindicated his pre-1995 criticisms.
 

 Sengupta also argues that his qualifications and the awards he received while employed by the university demonstrate that he “deserves appointment” to SME. But UAF does not base its refusal to rehire Sengupta on his lack of qualifications; it argues instead
 
 *578
 
 that Sengupta was “found to have been dishonest, unprofessional, and disruptive.” These were also grounds for his 1995 termination. Hence, Sengupta’s qualifications and awards are not relevant to whether UAF retaliated against him by refusing to rehire him.
 

 Because none of the evidence offered by Sengupta reasonably permits an inference that UAF’s 2003 application of its no-rehire policy was substantially motivated by the criticisms Sengupta expressed a decade earlier, the superior court properly granted summary judgment to UAF on this claim.
 
 [22]
 

 B. Sengupta Failed To Demonstrate the Existence of a Genuine Issue of Material Fact Regarding Whether UAF Violated Its Own Policies.
 

 Sengupta claims that the superior court erred in granting summary judgment against him on his claim that UAF refused to rehire him because he filed grievances against UAF in 1992 and 1993 seeking higher pay and a promotion. Regents’ Policy 04.08.040 prohibits the university from retaliating against a grievant “for good faith participation in the dispute and grievance resolution process.” Sengupta offers no evidence for this argument beyond UAF’s admitted reliance on his 1995 termination to deny him reemployment in 2003. As with Sengupta’s First Amendment claim, to avoid summary judgment after the university makes a prima facie showing that its 2003 action was not in retaliation for filing the 1992 and 1993 grievances, Sengupta must offer at least some evidence of a retaliatory motive on the part of the UAF officials who failed to rehire him.
 
 [23]
 
 He has not done so.
 

 Sengupta also argues that UAF violated Regents’ Policy 04.04.040(A)(4) because his 2002 application did not receive peer review. But this provision does not require peer review, either by express command or through its requirement that appointments be made “in accordance with Regents’ Policy and policy and procedures approved for each university.”
 
 [24]
 
 Furthermore, it appears that no provisions in the UAF Faculty Appointment and Evaluation Policies, the Faculty Collective Bargaining Agreement, or the UAF Faculty Constitution require peer review of the chancellor’s appointment decisions. Sengup-ta identifies no specific provisions that contain a peer review requirement pertinent to his rehire application.
 

 Sengupta also argues that UAF cannot deny him employment on the basis of his termination because the appointment policies “do not have any provision to consider ‘circumstances of termination’ eight years ago (in 1995) as the exclusive basis or even as a criteri[on] to deny a new appointment to the position as a Professor.” But because the policies provide no substantive criteria for appointments, the lack of any specific policy dealing with the rehiring of terminated employees cannot be interpreted as limiting the chancellor’s discretion to refuse to rehire on the basis of the prior termination.
 

 C. UAF Was Not Required To Consider “Mitigating Circumstances” in Refusing To Rehire Sengupta.
 

 Sengupta argues that UAF could not refuse to rehire him without considering “mitigating circumstances” in his termination. He cites a federal appeals court decision that required the district court to consider “mitigating factors” in determining whether a university had cause to terminate a tenured professor.
 
 [25]
 
 But because UAF was not required, either by law or its own
 
 *579
 
 policies, to demonstrate “cause” for refusing to rehire Sengupta, the federal case is inap-posite.
 

 
 *578
 
 Method of appointment. All appointments shall be made by the Chancellor or the Chancellor's designee in accordance with Regents’ Policy and policy and procedures approved for each university.
 

 
 *579
 
 D. Sengupta Failed To Exhaust His Administrative Remedies Before Bringing His Title VII Discrimination Claim.
 

 Sengupta argues that UAF failed to present evidence at summary judgment that its failure to rehire Sengupta was not based on race. We need not reach the merits of this argument because Sengupta failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission (EEOC).
 

 Claimants under Title VII generally may not bring civil actions unless they have first filed a charge with the EEOC within 180 days of the alleged discrimination.
 
 [26]
 
 If the EEOC either finds against the claimant or takes no action, it issues a “right to sue” letter, permitting the claimant to bring suit against the defendant.
 
 [27]
 

 Sengupta had filed complaints with the EEOC before he began his 1997 lawsuit and had received “right to sue” letters from the EEOC in response. Sengupta explains that he did not file a complaint with the EEOC before filing the current lawsuit because “it would [have been] futile to file another charge with the [EEOC] on the same facts. Sengupta was sure that the [EEOC] would issue him a fourth Right[ ] to Sue [letter] if he would have filed another complaint with the [EEOC].” Sengupta alleges, without evi-dentistry support, that the EEOC told him after he filed his earlier complaints that it was “unable to investigate Sengupta’s charges due to lack of staff and resources.”
 

 Sengupta’s futility argument is unpersuasive. Although courts have split on whether a showing of futility excuses Title VII’s exhaustion requirement,
 
 [28]
 
 we need not decide that legal question here because Sengupta has failed to demonstrate futility. Sengupta would infer from an alleged conversation with the EEOC in 1997 that the EEOC in 2003 lacked the resources to investigate his 2003 claim. Such an inference would be too tenuous and speculative to satisfy any futility exception that may exist in Title VII.
 
 [29]
 

 E. Sengupta Cannot Reopen the Judgment in His 1995 Termination Proceeding.
 

 Although Sengupta initially emphasizes on appeal that he is challenging UAF’s refusal to rehire him in 2003, he uses much of his opening brief to argue that the judgment in the 1995 termination proceedings should be reopened because he has discovered new evidence.
 

 Per Alaska Civil Rule 60(b), a motion for relief from judgment on the basis of newly discovered evidence or fraud must be made “not more than one year after the date of notice of the judgment.” Judge Hodges issued his decision in the pretermination case in 1996. It is now too late for Sengupta to reopen the termination proceeding
 
 on
 
 the basis of new evidence.
 
 [30]
 

 
 *580
 
 Furthermore, the new evidence Sengupta cites is not relevant to his 1995 termination. Sengupta spends much of his brief discussing the Regents’ report. He interprets it as vindicating his criticisms of SME, establishing the sole grounds upon which a tenured professor could be terminated, establishing the incompetence of his former colleagues, and establishing the trustworthiness of student evaluations of his teaching.
 

 On each of these counts Sengupta’s reading of the report is untenable. The report discusses some enrollment and retention problems and criticizes the faculty for lackluster research efforts, but it does not support any of Sengupta’s contentions regarding his 1995 termination.
 

 Other new evidence cited by Seng-upta as a basis for reopening his termination case, including a Department of Labor report, an investigative report by UAF concerning an associate general counsel, and a civil complaint by the associate general counsel against Sengupta’s first hearing officer, is also irrelevant to the termination proceeding. Sengupta’s remaining arguments for reopening his pretermination hearing are both unpersuasive and untimely.
 
 [31]
 

 F. The Superior Court Did Not Err in Denying Sengupta’s Motion To Reopen His 1997 Discrimination Case.
 

 The superior court in 2005 summarily denied Sengupta’s motion to reopen his 1997 civil rights case against UAF. Sengupta argues that the Regents’ report demonstrates that he was treated differently than Caucasian and Chinese faculty members because he was fired and they were not. Seng-upta’s motion to reopen the judgment resolving his previous lawsuit is barred by the one-year time limit for reopening judgments for newly discovered evidence.
 
 [32]
 
 Furthermore, Sengupta incorrectly interprets the Regents’ report as requiring that all faculty members be fired for poor research efforts. The report recommends a prospective policy of termination for low research output, not a retroactive one. Sengupta’s new evidence is therefore also irrelevant.
 

 G. Sengupta Failed To Timely Raise the Superior Court’s Failure To Rule on His Peremptory Challenge.
 

 On September 17, 2003 Sengupta filed in the superior court a document entitled “Plaintiffs Challenge on the Assignment of Judge Mark [I.] Wood.” The document simply reads, in relevant part, “Plaintiff challenges [the] assignment [of] Judge Mark [I.] Wood.” On the same day Sengupta also filed a motion seeking Judge Wood’s recusal on the basis of an alleged conflict of interest. Judge Wood denied that motion, but did not specifically address Sengupta’s “Challenge.” Sengupta argues that the “Challenge” was a peremptory challenge under Alaska Civil Rule 42(c) and that his “Challenge” required Judge Wood to recuse himself under that rule.
 

 Alaska Civil Rule 42(e) allows each party one peremptory challenge of the assigned judge.
 
 [33]
 
 Although Sengupta’s “Challenge”
 
 *581
 
 was not entitled “Notice of Change of Judge,” as Alaska Civil Rule 42(c)(1) requires, we hold that, under our lenient approach to filings by pro se litigants,
 
 [34]
 
 Sengupta’s “Challenge” sufficiently conformed to the requirements of Alaska Civil Rule 42(c).
 

 But given Sengupta’s failure to follow the requirements of Rule 42(c), it is not surprising that the superior court did not recognize the document as a separate peremptory challenge, particularly because it was filed simultaneously with Sengupta’s motion papers seeking Judge Wood’s recusal for cause. Upon entry of Judge Wood’s next ruling in the case, the October 14, 2003 denial of Seng-upta’s motion for recusal for cause, plaintiff should have realized that the court had not recognized that his companion document was really a Rule 42(c) notice of change of judge. The entry of the order denying the recusal motion would have been unnecessary had the judge seen and acted on the separate “Challenge” document.
 

 But Sengupta did not raise the issue of the unresolved “Challenge” at the time of that ruling, or, as far as we can tell from the record, at any other time during the superior court proceedings in the ensuing months. Regarding pre-trial motions, we have held that “[t]o preserve a claim based on a superi- or court’s failure to rule on a motion, a party must make every effort to request and obtain a ruling before proceeding to trial.”
 
 [35]
 
 Allowing a litigant to wait until after entry of final judgment to inform a court that there is an unresolved Rule 42(c) peremptory challenge would invite abuse, providing litigants with the ability to avoid unfavorable judgments and relitigate their cases before different judges. We therefore hold that even a pro se litigant must make an effort to obtain a ruling on a peremptory challenge once it becomes apparent that the assigned judge is continuing to preside over the case. Because Sengupta made no effort to obtain such a ruling after Judge Wood entered the October 14, 2003 order, he did not preserve the issue for appeal.
 

 H. The Provost Was Authorized To Deny Employment to Sengupta.
 

 Finally, Sengupta argues that the UAF provost is not authorized to review the “circumstances of termination of a tenured Professor.” Sengupta’s contention is without merit. UAF vests the power of appointment in “the chancellor or the chancellor’s desig-nee.” No university policy or other legal principle prevents the provost from serving as the chancellor’s designee merely because the applicant was previously involved in a contentious termination for cause. In rejecting Sengupta’s 2003 rehire application, the provost, like every other official at UAF, was entitled to rely on the finality of the termination proceeding and therefore to assume that the legal issues surrounding Sengupta’s termination had long-since been resolved in favor of UAF.
 

 IV. CONCLUSION
 

 We therefore AFFIRM the judgment below.
 

 MATTHEWS, Justice, not participating.
 

 [1]
 

 .
 
 Sengupta v. Univ. of Alaska (Sengupta
 
 I), 21 P.3d 1240, 1245-46 (Alaska 2001).
 

 [2]
 

 .
 
 Id.
 
 at 1246-47.
 

 [3]
 

 .
 
 Id.
 
 at 1247. Sengupta subsequently brought a malpractice suit against his attorney for failing to file a timely appeal. We recently affirmed the superior court’s grant of summary judgment against Sengupta in that case.
 
 Sengupta v. Wickwire,
 
 124 P.3d 748, 755 (Alaska 2005).
 

 [4]
 

 .
 
 Sengupta I, 21
 
 P.3d at 1247.
 

 [5]
 

 .
 
 Id.
 
 at 1252.
 

 [6]
 

 .
 
 Id.
 
 at 1247.
 

 [7]
 

 .
 
 Id.
 
 at 1247-48.
 

 [8]
 

 .
 
 Id.
 
 at 1263.
 

 [9]
 

 .
 
 Id.
 
 at 1252. These statements included the contents of a letter he sent to a slate representative and copied to the governor, criticizing the qualifications of his colleagues, his accusation that a colleague secretly interfered with his attempt to purchase software for the school, and his testimony at the grievance proceeding concerning an anonymous videotape allegedly showing his colleagues neglecting their duties at a Las Vegas convention.
 
 Id.
 

 [10]
 

 . Alaska R. Civ. P. 56(c).
 

 [11]
 

 .
 
 Rockstad v. Erikson,
 
 113 P.3d 1215, 1219 (Alaska 2005);
 
 Kaiser v. Umialik Ins.,
 
 108 P.3d 876, 879 (Alaska 2005).
 

 [12]
 

 .
 
 Kaiser,
 
 108 P.3d at 879.
 

 [13]
 

 .
 
 See Sanchez v. City of Santa Ana,
 
 936 F.2d 1027, 1038 (9th Cir.1991) (as amended on Denial of Rehearing and Rehearing En Banc).
 
 But cf. Garcetti v. Ceballos,
 
 - U.S. -, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006) (holding that statements made by public employees "pursuant to their official duties" are not constitutionally protected).
 

 [14]
 

 .
 
 See id.
 
 at 1037.
 

 [15]
 

 .
 
 Ulrich v. City & County of San Francisco,
 
 308 F.3d 968, 976 (9th Cir.2002).
 

 [16]
 

 .
 
 See Ulrich,
 
 308 F.3d at 976.
 

 [17]
 

 .
 
 Id.
 
 at 980.
 

 [18]
 

 . Sengupta's failure may result from his apparent belief that we held in
 
 Sengupta I
 
 that he had proved First Amendment retaliation by UAF. In fact, we held only that Sengupta would have been entitled to
 
 raise
 
 a First Amendment defense in the pretermination hearing.
 
 Sengupta I,
 
 21 P.3d at 1252. We expressed no opinion about whether such a defense would have been successful.
 

 [19]
 

 .
 
 Cf. Raytheon Co. v. Hernandez,
 
 540 U.S. 44, 55, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (holding that, in disability discrimination case, if employer applied "a neutral, generally applicable no-rehire policy,” to employee terminated for cause, employer's "decision not to rehire [former employee] can, in no way, be said to have been motivated by [former employee's] disability”).
 

 [20]
 

 . The UAF Faculty Appointment and Evaluation Policies state that ”[a]ll appointments shall be made by the chancellor or the chancellor’s desig-nee in accordance with [Board of Regents'] Policy and policy and procedures approved for the University of Alaska Fairbanks.” The Regents' Policy uses almost identical language.
 

 [21]
 

 . Because Sengupta's pretermination expressions of criticism of the school related to the integrity and qualifications of faculty members— issues not mentioned in the report — we doubt that such an inference is reasonably permissible.
 

 [22]
 

 . Because we affirm on the basis of UAF’s argument that Sengputa did not establish a prima facie case of First Amendment retaliation, we need not consider UAF’s contention that collateral estoppel and res judicata bar Sengputa’s claim.
 

 [23]
 

 . Provost Reichardt and Chancellor Lind both stated in their affidavits that Sengupta was refused reemployment because of his previous termination for cause and not because of his use of the grievance process.
 

 [24]
 

 . Regents’ Policy 04.04.040(A)(4) states:
 

 [25]
 

 .
 
 McConnell v. Howard Univ.,
 
 818 F.2d 58, 64 (D.C.Cir.1987).
 

 [26]
 

 . 42 U.S.C. § 2000e-5(e)-(f) (2000).
 

 [27]
 

 .
 
 Greenlaw v. Garrett,
 
 59 F.3d 994, 999 (9th Cir.1995).
 

 [28]
 

 .
 
 See Lilly v. Harris-Teeter Supermarket,
 
 720 F.2d 326, 335 (4th Cir.1983) (holding that futility exception applied to interveners when EEOC had already denied almost identical claims by plaintiffs in same lawsuit who were injured by same alleged conduct);
 
 Murphy v. West,
 
 945 F.Supp. 874, 876 (D.Md.1996) (holding that plaintiff's assertion of futility exception in Title VII was “extraordinary proposition” that "must be rejected out of hand”);
 
 Bachman v. Collier,
 
 73 F.R.D. 300, 303 (D.D.C.1976) (stating in dictum in Title VII case that ”[t]his Court would not require exhaustion if it concluded that said exhaustion would be no more than a futile act”);
 
 DeFigueiredo v. Trans World Airlines, Inc.,
 
 322 F.Supp. 1384, 1385-86 (S.D.N.Y.1971) (holding that exhaustion would be futile in class action when another member of class had already filed complaint with EEOC over same discriminatory practices).
 

 [29]
 

 . Sengupta also argues that Regents’ Policy 04.02.010 prohibits discrimination by the university and does not require claimants to file a complaint with the EEOC. Because exhaustion is a federal statutory requirement, it is irrelevant that the Regents' Policy does not require claimants to exhaust their EEOC remedies.
 

 [30]
 

 . Rather than rely on Alaska Civil Rule 60, Sengupta contends that his termination proceedings should be reopened because he was denied a "full and fair opportunity to litigate.” We have held the lack of a full and fair opportunity to
 
 *580
 
 litigate may prevent a judgment from being given preclusive effect under the doctrine of res judicata.
 
 Sengupta I,
 
 21 P.3d at 1257. But Sengupta is not seeking here to avoid preclusion of his claims; he is seeking to reopen the past judgment that made final his termination for cause and that therefore, as a matter of UAF policy, made him ineligible for rehire. He may not do so without satisfying Alaska Civil Rule 60.
 

 [31]
 

 . A number of Sengupta’s additional arguments why his termination case should be reopened first appear in his reply brief. We deem arguments raised for the first time in a reply brief to have been waived.
 
 See Simpson v. State, Commercial Fisheries Entry Comm'n,
 
 101 P.3d 605, 611 (Alaska 2004).
 

 [32]
 

 .
 
 See
 
 Alaska R. Civ. P. 60(b).
 

 [33]
 

 .Alaska Civil Rule 42(c) states in relevant part:
 

 (c) Change of Judge as a Matter of Right. In all courts of the state, a judge or master may be peremptorily challenged as follows:
 

 (1)
 
 Nature of Proceedings.
 
 In an action pending in the Superior or District Courts, each side is entitled as a matter of right to a change of one judge and of one master. Two or more parties aligned on the same side of an action, whether or not consolidated, shall be treated as one side for purposes of the right to a change of judge, but the presiding judge may allow an additional change of judge to a party whose interests in the action are hostile or adverse to the interests of another party on the same side. A party wishing to exercise the right to change of judge shall file a pleading entitled "Notice of Change of Judge.” The
 
 *581
 
 notice may be signed by an attorney, it shall state the name of the judge to be changed, and it shall neither specify grounds nor be accompanied by an affidavit.
 

 [34]
 

 .
 
 See Kaiser v. Sakata,
 
 40 P.3d 800, 803 (Alaska 2002) ("[T]he pleadings of pro se litigants [should be held] to less stringent standards than those of lawyers, particularly where lack of familiarity with the rules rather than gross neglect or lack of good faith underlies litigants’ errors.”).
 

 [35]
 

 .
 
 Taylor v. Johnston,
 
 985 P.2d 460, 467 (Alaska 1999).