Earle R. PIERCE Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–10484.

Court of Appeals of Alaska.

July 29, 2011.

Michael Schwaiger, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Earle R. Pierce Jr. appeals his convictions on three counts of robbery, one count of theft, and one count of misdemeanor assault. He contends that his trial was tainted because the State was allowed to introduce evidence that a witness had identified Pierce as the perpetrator of one of the robberies. Pierce argues that the witness's identification of him was the product of improperly suggestive procedures, and that the resulting identification was so unreliable that the introduction of this evidence violated his right to due process of law.

In particular, Pierce asserts that the witness's identification of him was impermissibly unreliable under the test announced by the United States Supreme Court in *Manson v. Brathwaite*[1] and later adopted by the Alaska Supreme Court in *Viveros v. State*.[2] Pierce argues in the alternative that, if the circumstances surrounding the witness's identification satisfy the *Brathwaite* test, we should replace the *Brathwaite* test with a more rigorous test based on recent scientific research into how police identification procedures can influence a witness's identification of a suspect, as well as the witness's later memory of the suspect.

We conclude that we need not—indeed, should not—reach the merits of Pierce's arguments. These arguments were not presented to the superior court, and the superior court made no ruling on the merits of these claims. Thus, as we explain in more detail in this opinion, the primary issue raised in this appeal does not involve the reliability of the witness's identification of Pierce, but rather the rules that govern the preservation of issues for appeal.

### Underlying facts

Pierce was indicted for four separate robberies, and the State wished to try all four charges together. Among the victims of these four robberies, only one victim stated that she was able to identify Pierce. This witness's identification of Pierce stemmed from a photo lineup that was shown to the witness several weeks after the robbery.

In advance of trial, Pierce's attorney filed a motion that was styled, "Motion to Sever Counts [for purposes of trial and] Motion to Suppress [the Eye-witness] Identification". In this motion, the defense attorney asserted (1) that Pierce should receive a separate trial for each of the four robberies charged in the indictment, and (2) that the witness's identification of Pierce from the photo lineup was the product of "unduly suggestive" identification procedures which resulted in an unreliable identification, and thus the State should not be allowed to introduce evidence of this identification.

With respect to the request for severance of the four robbery charges, Pierce's motion

---

**1.** 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

**2.** 606 P.2d 790, 792 & n. 1 (Alaska 1980).

contained a detailed description of the evidence pertaining to each robbery, and the legal reasons why Pierce should be granted separate trials.

But with respect to Pierce's request to suppress the witness's identification of him, Pierce's motion contained no discussion of the pertinent facts. Pierce cited two Alaska appellate decisions for the general proposition that unreliable witness identifications should be suppressed,[3] but Pierce offered no discussion of how this general proposition of law related to the facts of his case. Instead, Pierce's attorney wrote:

[The defense team currently has] no information about any contacts [that the identifying witness may have] had with [the] other [robbery] victims, or what other information [the witness] reviewed before [she identified Pierce in] the photo lineup. [For this reason, it] will be necessary to elicit that information at the ... scheduled evidentiary hearing[.] ... Any further argument [on this issue], therefore, is reserved until after the evidentiary hearing, and Mr. Pierce reserves his right to supplement the briefing [on this issue] following the evidentiary hearing[.]

In other words, even though Pierce's attorney told the superior court that she intended to ask for suppression of the witness's identification, the defense attorney offered no factual or legal analysis in support of this request. Instead, the defense attorney told the court that she would provide the basis for her motion after the testimony was presented at the evidentiary hearing.

The evidentiary hearing on the defense motion took place over a period of several days. The first four segments of the hearing were devoted primarily to the testimony of a series of witnesses. The attorneys presented their arguments during the last segment of the hearing—the portion of the hearing that took place on the afternoon of March 29, 2006.

Although Pierce's attorney presented a lengthy argument to the superior court, that argument was devoted solely to the question of whether the four robbery counts should be tried jointly or separately. During her remarks to the court, the defense attorney did not even mention the question of suppressing the eye-witness identification—much less present any factual or legal argument as to why, given the testimony developed at the evidentiary hearing, and given the pertinent law, the superior court should suppress that evidence.

On April 5, 2006 (*i.e.*, one week later), Superior Court Judge Philip Volland issued a fourteen-page written decision dealing with the pending pre-trial motions. In his decision, Judge Volland engaged in a lengthy examination of the facts of the four robberies, and a lengthy analysis of why the four robberies were properly joined for trial. Then, in a footnote on the final page of his decision, Judge Volland cursorily noted that he had "heard no evidence to support any conclusion that [the witness's] identification of Pierce was the result of unnecessarily suggestive police procedure."

As we noted at the beginning of our opinion, Pierce's appellate briefs contain a detailed discussion of the evidence pertaining to the witness's identification of Pierce, as well as a lengthy analysis of why that identification should be deemed unreliable under the *Brathwaite* test. In addition, Pierce argues at length that, in light of recent research into the psychology of eye-witness identification, this Court should abandon the *Brathwaite* test in favor of a more rigorous test based on new scientific understanding of how police identification procedures can influence a witness's identification of a suspect, as well as the witness's later memory of the suspect.

(For a general discussion of this latter question, see our decision in *Tegoseak v. State*, 221 P.3d 345, 350–362 (Alaska App. 2009).)

*Why we conclude that these issues are not preserved for appeal*

 Under the law of appellate procedure, a litigant is not entitled to pursue a

---

**3.** *Holden v. State,* 602 P.2d 452 (Alaska 1979), and *White v. State,* 773 P.2d 211 (Alaska App. 1989).

claim on appeal unless that claim was presented to the lower court,[4] and unless the lower court issued a ruling on the merits of that claim.[5] Pierce's appeal requires us to examine what is meant by "presenting" a claim to the lower court.

As we noted in our statement of underlying facts, Pierce's attorney filed a pleading in which she alerted the superior court (and the State) that she intended to seek suppression of the witness's identification on the ground that it was the product of improperly suggestive procedures, and that the resulting identification was unconstitutionally unreliable.

Pierce's attorney called this pleading a "motion" for suppression of the identification, but the pleading did not contain all of the essential components of a motion. Alaska Criminal Rule 42(b) declares that a motion— that is, a request for a court to grant some form of relief—must include a "complete . . . statement of the reasons in support of the motion", including "the legal points and authorities upon which the . . . party will rely" and a "detailed statement of [the] material facts" supporting the request for relief.

Criminal Rule 42(b) codifies the principle that a litigant must not only tell the court *what* they want, but must also explain— unless it is already apparent—*why*, under the facts of the case and the pertinent law, the court is authorized or required to grant the relief the litigant is seeking.[6]

Here, Pierce's attorney stated that she intended to seek suppression of the witness's identification of Pierce on the ground that it was unreliable. But in this context, "unreliable" is a legal conclusion, not an argument.

Pierce's case was not a situation where the pertinent facts were clear and undisputed, and where the controlling law's application to those facts was obvious. Rather, Pierce's attorney explicitly stated that the pertinent facts would have to be developed at the evidentiary hearing.

At the close of that hearing, in order for Judge Volland to decide whether to exclude the witness's identification as "unreliable", Judge Volland had to (1) weigh the evidence pertaining to the circumstances of the identification, (2) resolve any disputes in the testimony concerning the pertinent facts, (3) decide whether, under the facts as he found them, the identification procedures were improperly suggestive, and then, if he concluded that the evidentiary procedures were indeed improperly suggestive, (4) decide whether the witness's identification of Pierce was nevertheless reliable under the five-factor test set forth in *Brathwaite*.

The defense attorney's pre-trial motion contained no discussion of these matters. Instead, the defense attorney informed Judge Volland that she would address these matters when the evidentiary hearing was completed. But, as we explained earlier in this opinion, when the defense attorney delivered her argument to Judge Volland at the close of the evidentiary hearing, she never once mentioned her request to suppress the witness's identification.

We particularly note that, in the defense attorney's remarks to Judge Volland at the close of the hearing, the attorney never referred to a single court decision (federal or state) dealing with the suppression of un-

---

4. See, e.g., *Miller v. Miller*, 105 P.3d 1136, 1142 (Alaska 2005); *Douglas v. State*, 151 P.3d 495, 500 (Alaska App.2006); *McCormick v. Anchorage*, 999 P.2d 155, 166 (Alaska App.2000).

5. See, e.g., *Sengupta v. University of Alaska*, 139 P.3d 572, 581 (Alaska 2006) ("To preserve a claim based on [the lower] court's failure to rule on a motion, a party must make every effort to request and obtain a ruling before proceeding to trial.") (quoting *Taylor v. Johnston*, 985 P.2d 460, 467 (Alaska 1999)); *Bryant v. State*, 115 P.3d 1249, 1258 (Alaska App.2005) ("Normally, an appellant may only appeal issues on which he has obtained an adverse ruling from the trial court."); *Mahan v. State*, 51 P.3d 962, 966 (Alas-

ka App.2002) ("To preserve an issue for appeal, an appellant must obtain an adverse ruling.").

6. See also Criminal Rule 30(a), which declares that a party may not pursue a claim of error relating to the jury instructions unless "the party object[ed] thereto [and stated] distinctly . . . the grounds of [their] objections."), and Evidence Rule 103(a)(1), which declares that a party may not pursue a claim of error relating to the admission of evidence unless the party "[made] a timely objection or motion to strike [the evidence]" and "stat[ed] the specific ground of objection, if the specific ground was not apparent from the context".

reliable eye-witness testimony. Nor did the attorney offer any analysis of whether, given the circumstances surrounding the witness's identification of Pierce, that identification should be viewed as the fruit of impermissibly suggestive procedures. Finally, the defense attorney never mentioned the *Brathwaite* criteria for assessing whether a witness's out-of-court identification should be deemed reliable despite a suggestive lineup; much less did she make any attempt to apply those criteria to the facts surrounding the witness's identification of Pierce.

In short, after the evidence had been heard, and the parties were presenting their arguments, the defense attorney never renewed her request for suppression of the witness's identification, nor did she articulate any reasons *why* Judge Volland should suppress the identification.

On appeal, Pierce argues that the defense attorney's pre-hearing suppression motion was sufficient to alert Judge Volland to the issue, and that it was unnecessary for the defense attorney to offer a more detailed explanation of why the witness's identification should be deemed unreliable. We reject this notion.

█ Both this Court and the Alaska Supreme Court have held that when a party objects to a ruling or other action of the lower court, the party must specify their *grounds* for objecting, or else the issue is not preserved for appeal. *Williams v. State,* 629 P.2d 54, 62 (Alaska 1981) ("[T]he ground of an objection must be clearly stated so that the [lower] court may intelligently rule upon the objection.... [If] there [is] no comprehensible objection, the point [is] not properly preserved for appeal."); *Willis v. State,* 57 P.3d 688, 692 (Alaska App.2002) ("An objection without an accompanying statement of reasons is not sufficient to preserve a point on appeal.").

Thus, in *Willis,* we held that the defendant failed to preserve a mistrial claim when the defense attorney asked for a mistrial but failed to advance any grounds to support the request. 57 P.3d at 691–92. In *Petersen v. State,* 930 P.2d 414, 434 (Alaska App.1996), and *Cornwall v. State,* 915 P.2d 640, 653 n. 11 (Alaska App.1996), we held that a defendant failed to preserve a jury instruction claim when the defense attorney declined to argue the point or provide any rationale for giving the requested jury instruction.

In *Ratliff v. State,* 110 P.3d 982 (Alaska App.2005), we applied this principle to a case where the defendant raised a *Daubert* objection to scientific evidence. The evidence in question was the proposed testimony of a criminologist who compared shoe prints found at the scene of the crime with the pattern on the bottom of Ratliff's shoes. The criminologist concluded that two of the shoe prints were definitely made by Ratliff's shoes, and that several other shoe prints were "consistent" with Ratliff's shoes—*i.e.,* they were made by Ratliff's shoes or by other shoes of the same brand or similar manufacture.[7]

Ratliff objected to this proposed testimony, arguing that shoe print comparison was not valid science under the test adopted by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*[8] and later adopted by the Alaska Supreme Court in *State v. Coon.*[9] In response to Ratliff's objection, the superior court held an evidentiary hearing on this issue. At this hearing, the criminologist described her training, her experience, and the procedures and methods used by her and other shoe print examiners—in particular, how shoe prints are taken and preserved, and how these prints are then compared to particular shoes.[10]

At the conclusion of the criminologist's testimony, the trial judge asked Ratliff's attorney if she had any argument to present regarding the scientific validity (or lack of validity) of the criminologist's analysis. The

7. *Id.,* 110 P.3d at 983.

8. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (construing the federal evidence rules governing expert testimony).

9. 974 P.2d 386 (Alaska 1999) (adopting *Daubert* as the proper interpretation of Alaska's rules governing expert testimony).

10. *Ratliff,* 110 P.3d at 983–84.

defense attorney had nothing to say: she simply responded, "Your Honor, as far as whether the general techniques [of shoe print analysis] are acceptable or not, I will just let the Court rule on that." [11] We indicated that "such a response is [not] sufficient to preserve a challenge to [the trial judge's] ruling".[12]

We reach the same conclusion in Pierce's case. Pierce's attorney told the superior court that she intended to seek suppression of the witness's identification under the theory that the identification was the unreliable fruit of improperly suggestive identification procedures. But when the time came for the defense attorney to provide a case-specific factual and legal analysis of why the witness's identification should be suppressed, the defense attorney did not provide one.

It was not Judge Volland's job to figure out how the testimony presented at the evidentiary hearing, in combination with the applicable law, might conceivably justify suppression of the witness's identification. Nor was it Judge Volland's duty to make, unprompted, all the findings of fact and rulings of law needed to resolve any and all possible arguments in support of suppression. Rather, it was the defense attorney's job to frame an argument that contained a proposed factual and legal analysis of Pierce's case, and to seek the judge's ruling on that argument.

█ This requirement is not some arbitrary rule imposed by irascible appellate judges for the purpose of shielding themselves from work. Instead, the primary purposes of this requirement are to make sure (1) that civil or criminal litigation in the trial court remains the "main event" (as opposed to the appeal), and (2) that appellate courts do not decide issues of law in a factual vacuum, or under hypothetical facts, or under "facts" that are actually counter-factual.

█ Under this preservation rule, before a litigant can invoke the authority of an appellate court to reverse or vacate a trial court's decision, the litigant must demonstrate that they gave the trial judge reasonable notice of their request or objection, and gave the judge a reasonable opportunity to respond to that request or objection. This rule affirms the primacy of the trial court proceedings by restricting litigants' ability to attack trial court decisions under novel theories in an ensuing appeal.

█ This rule also ensures that, when issues are litigated in the trial court, the opposing party will have a fair opportunity to muster the evidence and legal arguments to respond to the litigant's request or objection. In Pierce's case, for instance, the defense attorney never mentioned the suppression issue when she delivered her argument to Judge Volland at the close of the evidentiary hearing—and, apparently for this reason, the prosecutor omitted any discussion of the suppression issue when he addressed Judge Volland (in response to the defense attorney's argument). We therefore do not know what factual and legal theories the prosecutor might have relied on if the defense attorney had argued for suppression of the witness's identification of Pierce.

The preservation rule also promotes the regularity and fairness of appellate litigation. In many instances, proper resolution of a litigant's request or objection will require the trial judge to make findings regarding the weight, credibility, or accuracy of witnesses' testimony. And in many instances, the law will not provide a specific solution to the problem, and the trial judge will have to exercise discretion. The preservation rule ensures that the trial judge has made the required findings, and/or exercised the required discretion, before the appellate court takes up the issue. This avoids the problem of having an appellate court decide a case based on contested or hypothetical facts, or based on what the trial judge conceivably might have done (or might have refrained from doing) if they had been asked.

As we have said, Pierce's briefs to this Court present an extensive argument—both factual and legal—as to why the witness's identification of him should be deemed the unreliable product of unlawfully suggestive police procedures. But neither the factual

11. *Id.* at 985.

12. *Ibid.*

components nor the legal components of this argument were ever presented to Judge Volland. The judge was never asked to make findings of fact based on the testimony presented at the evidentiary hearing, nor was the judge asked to evaluate the facts surrounding the witness's identification in light of the *Brathwaite* criteria. And Pierce's trial attorney never suggested that the *Brathwaite* criteria should be abandoned in favor of a different test. For these reasons, Pierce is not entitled to ask this Court to suppress the witness's identification based on the theories set forth in his appellate briefs.

Pierce offers two arguments in an attempt to avoid this conclusion.

First, Pierce argues that, even though his trial attorney may never have presented a detailed factual and legal explanation of why the witness's identification should be suppressed, Judge Volland nevertheless *did* reach the merits of the suppression issue— and that the judge essentially ruled that there was *no* possible argument in favor of suppressing the witness's identification.

■ To support this assertion that Judge Volland issued a ruling on his suppression motion, Pierce relies on the concluding footnote of Judge Volland's decision, where the judge stated that he had "heard no evidence to support any conclusion that [the witness's] identification of Pierce was the result of unnecessarily suggestive police procedure." Pierce argues that this footnote constitutes a ruling by Judge Volland that, under any and all possible constructions of the evidence, the eye-witness identification of Pierce was sufficiently reliable to satisfy constitutional standards.

We disagree with this characterization of Judge Volland's footnote. It is not reasonable to interpret this footnote as a "ruling" on whether the witness identification procedures in Pierce's case satisfied due process— because, at the close of the evidentiary hearing, the defense attorney did not ask Judge Volland to decide this question.

Rather, we construe the footnote as equivalent to the statement that Pierce had *not litigated* the eye-witness identification issue. Judge Volland was acknowledging that Pierce's attorney had earlier announced that she intended to pursue this issue, but the judge was also noting that the defense attorney failed to argue this issue at the close of the evidentiary hearing.

The judge's footnote was perhaps also an invitation to the defense attorney to file a supplemental pleading or take other action if she had somehow unwittingly failed to pursue the suppression issue—but the defense attorney filed no further pleadings on this matter.

From the record of the trial court proceedings, it appears that the defense attorney made a tactical decision not to seek pre-trial suppression of the photo lineup identification, but rather to attack the reliability of that identification during Pierce's trial. For this purpose, Pierce's trial attorney engaged the services of Dr. Geoffrey Loftus, an expert on human sensory perception, memory, and eye-witness identification. At trial, Dr. Loftus testified at length about the factors that might cause one to doubt the accuracy of a witness's identification of a suspect from a photo lineup following a violent crime.

The defense attorney's failure to ask Judge Volland to suppress the witness's identification (indeed, the attorney's failure to even *mention* the suppression issue at the close of the evidentiary hearing), coupled with the attorney's affirmative decision to present Dr. Loftus's testimony at Pierce's trial, strongly suggests that the defense attorney made a conscious choice "to argue a tainted lineup to the jury rather than attempting to suppress the lineup [identification] entirely". *McGee v. State*, 614 P.2d 800, 804 n. 6 (Alaska 1980). Because the record strongly suggests that the defense attorney had a tactical reason for failing to ask Judge Volland to suppress the witness's identification of Pierce, Pierce is now barred from asking us to suppress the identification under the rubric of "plain error".[13]

---

13. *See Borchgrevink v. State*, 239 P.3d 410, 421 (Alaska App.2010) ("[U]nder Alaska law, when a defendant presents a claim of plain error, the

defendant must negate the possibility that their attorney's failure to make a timely objection in the trial court was the product of a tactical

Finally, Pierce argues that even if his suppression claims are not properly preserved for appeal, and even if they can not be considered under the rubric of "plain error", this Court may nevertheless take up those claims and resolve them. Pierce notes that in *Tegoseak v. State*, 221 P.3d 345 (Alaska App. 2009), this Court engaged in an extensive discussion of the law pertaining to eye-witness identification, and of recent research into the psychology of eye-witness identification, even though the parties did not raise many of the points discussed by this Court.

But our discussion of these issues in *Tegoseak* was just that—a discussion. We did not resolve Tegoseak's appeal on the basis of that discussion. More to the point, we were free in *Tegoseak* to discuss the potential flaws in the current legal approach to the reliability of eye-witness identification, even though these matters had not been briefed by the parties, *specifically because* the resolution of Tegoseak's case did not hinge on these matters, so that we did not need to reach any conclusion regarding these matters.

### Conclusion

Because the claims raised by Pierce in this appeal were never presented to Judge Volland, nor ruled upon by him, and because Judge Volland did not commit plain error when he failed to suppress the eye-witness identification *sua sponte*, the judgement of the superior court is AFFIRMED.

decision."); *Henry v. State*, 861 P.2d 582, 589 (Alaska App.1993) (an appellate court will not entertain a claim of plain error when it appears that the litigant had a tactical reason to withhold an objection); *Robison v. State*, 763 P.2d 1357, 1358 n. 1 (Alaska App.1988) (if a litigant had strategic reasons for refraining from seeking a remedy, this precludes a finding of plain error).